# CUNNIUS, NOW SMITH, *v.* READING SCHOOL DISTRICT.

ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 165. Argued March 6, 1905.—Decided May 29, 1905.

That the Fourteenth Amendment does not deprive the States of their police
power over subjects within their jurisdiction is elementary; and, in deter-
mining the validity of a statute, the question before the court is not the
wisdom of the statute but whether it is so beyond the scope of the mu-
nicipal government as to amount to a want of due process of law.

The right to regulate concerning the estate or property of absentees is an
attribute, which in its very essence belongs to all governments, to the
end that they may be able to perform the purposes for which govern-
ment exists, and in the absence of restrictions, in its own constitution,
none of which exists in the State of Pennsylvania, is within the scope of
of a state government; nor does the exercise of this power violate the
Fourteenth Amendment by depriving the absentee of his property
without due process of law in case he is alive when the proceedings are
initiated.

Where the provisions of a state statute for administration on the assets of
an absentee are reasonable as to the period of absence necessary to create
the presumption of death, and create proper safeguards for the protection
of his interests in case the absentee should return, it does not violate the
due process clause of the Fourteenth Amendment, because it deprives
the absentee of his property without notice.

The Pennsylvania statute of 1885, Public Laws, p. 155, providing for the
administration of the property of persons absent, and unheard of, for
seven or more years, is a valid enactment and is not repugnant to the
Fourteenth Amendment because it deprives the absentee of his property
without due process of law.

THE legislature of Pennsylvania, in 1885, adopted a law
"relating to the grant of letters of administration upon the
estates of persons, presumed to be dead, by reason of long
absence from their former domicil." Briefly, and in sub-
stance, the act provided that upon application made to the
register of wills for letters of administration upon the estate
of any person supposed to be dead on account of absence for

seven or more years from the place of his last domicil within the State, the register of wills shall certify the application to the orphans' court, and that said court, if satisfied that the applicant would be entitled to administration if the absentee were in fact dead, shall cause the fact of the application to be advertised in a newspaper published in the county once a week for four successive weeks, giving notice that on a day stated, which must be two weeks after the last publication, evidence would be heard by the court concerning "the alleged absence of the supposed decedent and the circumstances and duration thereof." After providing for a hearing in the orphans' court, the statute empowers that court, if satisfied by the proof that the legal presumption of death is made out, to so decree and cause a notice to be inserted for two successive weeks in a newspaper published in the county, and also, when practicable, in a newspaper published at or near the place beyond the State where, when last heard from, the supposed decedent had his residence. This notice requires the absentee, if alive, or any other person for him, to produce to the court, within twelve weeks from the date of the last insertion of the notice, satisfactory evidence of the continuance in life of the absentee. If, within the period of twelve weeks, evidence is not produced to the court that the absentee is alive, the statute makes it the duty of the court to order the register of wills to issue letters of administration to the party entitled thereto, and such letters, until revoked, and all acts done in pursuance thereof, and in reliance thereupon, shall be as valid as if the supposed decedent were really dead. Power is further conferred upon the orphans' court to revoke the letters at any time on proof that the absentee is in fact alive, the effect of the revocation being to withdraw all the powers conferred by the grant of administration. But it is provided that—

"All receipts or disbursements of assets, and other acts previously done by him," (the administrator) "shall remain as valid as if the said letters were unrevoked, and the administrator shall settle an account of his administration down to

the time of such revocation, and shall transfer all assets remaining in his hands to the person as whose administrator he had acted, or to his duly authorized agent or attorney: *Provided,* Nothing in this act contained shall validate the title of any person to any money or property received as widow, next of kin, or heir of such supposed decedent, but the same may be recovered from such person in all cases in which such recovery would be had, if this act had not been passed."

It is further provided that before any distribution of the estate of such supposed decedent shall be made to the persons entitled to receive it, they shall give security, to be approved by the orphans' court, in such sum as the court shall direct, conditioned that if the absentee "shall, in fact, be at the time alive, they will, respectively, refund the amounts received by each on demand with interest thereon, but if the person or persons entitled to receive the same is or are unable to give the security aforesaid, then the money shall be put at interest on security approved by said court, which interest is to be paid annually to the person entitled to it, and the money to remain at interest until the security aforesaid is given, or the orphans' court, on application, shall order it to be paid to the person or persons entitled to it."

After affording remedies in favor of the absentee in case the issue of letters should be subsequently revoked, the statute provides that the costs attending the issue of letters or their revocation shall be paid out of the estate of the supposed decedent, and that the costs arising upon the application for letters which shall not be granted shall be paid by the applicant. Public Laws, 1885, p. 155.

The plaintiff in error, Margaret Cunnius, now Margaret Smith, whom we shall hereafter refer to as Mrs. Smith, prior to and at the time of the passage of this act, was domiciled in the State of Pennsylvania. In virtue of her right of dower in certain real estate of her husband, which passed to him from his deceased mother's estate, she became entitled to the annual interest during her life on the sum of $569.61. This debt was

assumed by John M. Cunnius, who acquired the real estate from which the right of dower arose, and was in turn assumed by the Reading School District, in consequence of its acquisition from John M. Cunnius of the property. The School District paid the interest as it accrued to Mrs. Smith, at her domicil in the city of Reading, up to the first of April, 1888. In that year she left her domicil in the city of Reading, and for nearly nine years, up to March, 1897, she had not been heard from. At that date her only son, who resided in Reading, alleging the absence of his mother for the period stated, and the fact that she had not been heard from, and the consequent presumption of her death, made application to the register of wills, under the statute to which we have just referred, for letters of administration. After the reference of the matter to the orphans' court, as required by the statute, and the making of the publication and compliance with the other requisites of the statutes, the letters of administration which the statute authorized were granted. Under the authority thus conferred the administrator collected from the Reading School District the arrears of interest which had accrued on the right of dower of Mrs. Smith, from the date of the last payment made to her before her disappearance on April 1, 1888, down to the time of the appointment of the administrator. The administrator gave the School District a receipt and discharge. In 1899 Mrs. Smith sued the Reading School District in the Court of Common Pleas of Berks County to recover the arrears of interest which had been paid during her absence to the administrator appointed by the orphans' court. And the proof in the suit developed that at the time the proceedings against her as an absentee were initiated, and when the administrator was appointed, she was living in Sacramento, California. The School District relied for its defense upon the payment of the interest made to the administrator and the discharge which that officer had given under the law. Mrs. Smith asserted that the proceedings in the state court and the receipt of the administrator furnished no protection

to the School District, because, as she was alive when the proceedings for administration were taken in the state court, those proceedings and the law which authorized them were repugnant to the Fourteenth Amendment to the Constitution of the United States. She, moreover, contended, even although there was power in the State to provide by law for the administration of the property of an absentee, the particular law in question was repugnant to the Fourteenth Amendment to the Constitution, as it did not provide for adequate notice, and because the law failed to furnish the necessary safeguards to give it validity. The case went to a jury upon legal points being reserved.

The trial court decided that Mrs. Smith was entitled to recover, because the Pennsylvania statute did not provide essential notice, and was, therefore, repugnant to the due process clause of the Fourteenth Amendment. The Superior Court, to which the case was taken, affirmed the action of the trial court on the ground that, as Mrs. Smith was alive when the proceedings to administer her estate as an absentee were had, that administration was void and the statute authorizing it was repugnant to the Fourteenth Amendment. 21 Superior Court Pa. 340. The Supreme Court of Pennsylvania, on appeal, reversed the judgments of the court below, and decided that the statute was a valid exercise of the police power of the State, and, therefore, both as to form and substance, was not repugnant to the Fourteenth Amendment. 206 Pa. St. 469.

*Mr. Caleb J. Bieber* for plaintiff in error:

Plaintiff was deprived of her property without due process of law. Whether property is taken without due process depends on the nature of each case. *Leigh* v. *Green*, 193 U. S. 79, 87; *Del Castillo* v. *McConnico*, 168 U. S. 674, 680. By leaving the State and not demanding arrearage of interest plaintiff ran no risk except to be barred by the twenty-one year state statute of limitations. She made her demand prior

to that time and any attempt to turn her claim over to another meanwhile deprived her of it without due process.

If her departure from Pennsylvania and her omission to demand her arrearages for a period of eleven years worked an injury to any one, it was to herself alone, and not to any public right such as would bring this case within the police powers of the State. *Clapp* v. *Houg,* 98 N. W. Rep. 710; *Lavin* v. *Bank,* 1 Fed. Rep. 641, 668. She was under no legal obligation to remain in Reading.

The object of the act is to administer on the estates of persons presumed, from all the evidence at hand, to be dead.

As to the construction of the act see *Devlin* v. *Commonwealth,* 101 Pa. St. 273. And while the state court has held that its object is to conserve the estate rather than distribute it, it still deprives a living person of his property without due process. *Clapp* v. *Houg,* 98 N. W. Rep. 710; and it is not the purpose but the effect of an act that determines its constitutionality. *Pa. R. R. Co.* v. *Ribble,* 66 Pa. St. 164; *S. C.,* 92 U. S. 259; *Carr* v. *Brown,* 20 R. I. 217; *Lavin* v. *Bank,* 1 Fed. Rep. 641, 661; *Davidson* v. *New Orleans,* 96 U. S. 97, 102.

The orphans' court had no jurisdiction over the person of the plaintiff and could not, in the absence of personal service, or the voluntary appearance of the plaintiff in the proceeding, render a decree or order which would be binding on her personally. Herrman on Estoppel, p. 201, § 182; *Boswell* v. *Otis,* 9 How. 336; *Lafayette Ins. Co.* v. *French,* 18 How. 408; *Pennoyer* v. *Neff,* 95 U. S. 714.

Taking the private property of one person and transferring it to another, is not due process of law. *Wilkinson* v. *Leland,* 2 Pet. 627, 657; *Ervine's App.,* 16 Pa. St. 264; *Missouri R. R. Co.* v. *Nebraska,* 164 U. S. 403; *Johnson* v. *Beasley,* 65 Missouri, 264; *King* v. *Hatfield,* 130 Fed. Rep. 583; *Dodge* v. *Missouri Township,* 107 Fed. Rep. 637.

The appointment of the administrator is open to collateral attack. *Stevenson* v. *Superior Ct.,* 62 California, 65; *Hamilton*

v. *Brown,* 161 U. S. 267.   A void judgment or decree is always open to collateral attack. . 1 Herman on Estoppel, 64.

For authorities on the invalidity of letters of administration upon the estate of a living person see *Carr* v. *Brown,* 20 R. I. 217; *Clapp* v. *Houg,* 98 N. W. Rep. 710; *Lavin* v. *Bank,* 1 Fed. Rep. 641; *Scott* v. *McNeal,* 154 U. S. 34, and cases cited p. 50.

To decide abstractly whether a State can by a statute clothe its courts with certain powers would not be to the point, because the same act of assembly may be valid as to some persons and the reverse as to others.   *Rothermel* v. *Myerle,* 136 Pa. St. 250, 266; *Presser* v. *Illinois,* 116 U. S. 252.   The persons as to whom an act is constitutional may not be before the court.   Granting that the State through an act of assembly has clothed a court with certain powers, the real point at issue is the effect of the operation of those powers on the rights of the party before the court.

The legal *situs* of plaintiff's property, that is, the right to the arrearages of interest owing her by the School District, as well as the *situs* of the arrearages themselves for which the defendant was indebted, was in California at the time of the proceedings.   *New Orleans* v. *Stempel,* 175 U. S. 310, 313, 314; *Tax on Bonds,* 15 Wall. 300, 320.

The proceeding under the act of 1885 is not of such a character as to constitute it a proceeding against property, thereby making it a proceeding *in rem,* for the property is not proceeded against nor taken possession of until after the appointment of the administrator in pursuance of a proceeding and a decree of a court of which the lawful owner of the property had no notice and to which he was neither party nor privy.   See *Leigh* v. *Green,* 193 U. S. 79, 91; *Leber* v. *Kauffelt,* 5 W. & S. Pa. 440, 445.

*Mr. Frederick W. Nicolls,* by special leave of court, with whom *Mr. William Rick* was on the brief, for defendant in error.

The act of 1885 created a jurisdiction in the orphans' court over the property of people living and coming within its terms

and this comes within the definition of jurisdiction to hear and determine a cause as declared by this court in *United States* v. *Arredondo,* 6 Pet. 709; *Cooper* v. *Reynolds,* 10 Wall. 316; and differentiates it from *Allen* v. *Dundas,* 3 T. R. 129; *Griffith* v. *Frazier,* 8 Cr. 9, 23, as shown in *Roderigas* v. *Savings Institution,* 63 N. Y. 460; *Plume* v. *Savings Institution,* 17 Vroom, 211.

For cases stating as a mere *obiter dictum,* that administration upon the estate of the living is a nullity see *Day* v. *Floyd,* 130 Massachusetts, 488, 489; *Andrews* v. *Avory,* 14 Gratt. 229, 236; *Moore* v. *Smith,* 11 Rich. 569; *Withers* v. *Patterson,* 27 Texas, 491, 497; *Johnson* v. *Beazley,* 65 Missouri, 250, 264; *Perry.* v. *St. Joseph & Western Railroad,* 29 Kansas, 420, 423; *Fish* v. *Nowell,* 9 Texas, 13, 18; *Morgan* v. *Dodge,* 44 N. H. 255, 259; *Quidort's Adm.* v. *Pergeaux,* 18 N. J. Eq. 472; *Martin* v. *Robinson,* 67 Texas, 368; *Waters* v. *Stickney,* 12 Allen, 1, 13; *Hamilton* v. *Brown,* 161 U. S. 256, 267. For those where the question was directly in issue, see *French* v. *Frazier,* 7 J. J. Marsh, 425, 427; *State* v. *White,* 7 Ired. 116; *Duncan* v. *Stewart,* 25 Alabama, 408; *Melia* v. *Simmons,* 45 Wisconsin, 334; *Thomas* v. *People,* 107 Illinois, 517; *Jochumsen* v. *Suffolk Savings Bank,* 3 Allen, 87, 96; *Devlin* v. *Commonwealth,* 101 Pa. St. 273; *Burns* v. *Van Loan,* 29 La. Ann. 560, 563; *Springer* v. *Shavender,* 118 N. Car. 33; *Schleicher* v. *Gutbrod,* 34 S. W. Rep. 550; *Stevenson* v. *Superior Court,* 62 California, 65; *Scott* v. *McNeal,* 154 U. S. 34. All of these were decided in the absence of any local statute similar to the act of 1885. There are some other authorities which refer directly to the existence of such local statute as a circumstance which might alter the case. 2 Wharton on Evidence, § 810; *D'Arusment* v. *Jones,* 4 Lea, 251.

The legislature can make a valid grant of jurisdiction to its courts over any legitimate subject matter, provided the subsequent steps be according to law. Such a grant of authority the Pennsylvania assembly directly conveyed by the act of 1885. It is an elementary principle that statutes are

to be construed according to the intention of the legislature. The intention of the legislature to confer jurisdiction over the subject matter is clear beyond a peradventure.

The former practice was for the register to grant letters upon the common law presumption of death after seven years' absence. But this method was rendered worthless by the opinion in *Devlin* v. *Commonwealth*, 101 Pa. St. 272, delivered in November, 1882, which held such administration absolutely void. The law was thus left in chaotic condition, for if a resident of the State disappeared, there was no way of settling his estate. This predicament occasioned the almost immediate passage of the act of 1885.

The grant to a court of jurisdiction over the estates of those who by reason of long absence are probably dead would seem a highly beneficial, and, if the process were proper, a legal and rational, exercise of legislative discretion. As to legislative grants of a generally similar jurisdiction which have been passed upon by Federal courts see *Arndt* v. *Griggs*, 134 U. S. 316; *Boswell* v. *Ohio*, 9 How. 336; *Bennett* v. *Fenton*, involving 18 Stat. 472, 41 Fed. Rep. 283; *Roller* v. *Holley*, 176 U. S. 398. And see also *Shepperd* v. *Ware*, 48 N. W. Rep. 773; *Gray* v. *Galis*, 37 Wisconsin, 614.

The orphans' court having authority over the estates of absentees presumed to be dead, who have left property within the jurisdiction of the court, the proceedings thereon are adapted to like cases of administration upon actual decedents, follow such precedents as closely as possible, and are, therefore, substantially proceedings *in rem*. *Kinselman* v. *Stine*, 192 Pa. St. 462; *Shaupe* v. *Shaupe*, 12 S. & R. 9; *Schalls' App.*, 40 Pa. St. 170; *Furness* v. *Smith*, 30 Pa. St. 520; *State Tax on Foreign-held Bonds*, 15 Wall. 300, distinguished. See *Savings Society* v. *Multnomah County*, 169 U. S. 421; *Bristol* v. *Washington County*, 177 U. S. 133; *Wyman* v. *Halstead*, 109 U. S. 654.

Proceedings under the act of 1885, being adapted to like cases of administration upon the estates of the dead, are sub-

stantially proceedings *in rem* and constructive notice, if reasonable, is sufficient. *Pennoyer* v. *Neff*, 95 U. S. 727; *Woodruff* v. *Taylor*, 20 Vermont, 73; Freeman on Judgments, § 607; Black on Judgments, § 793, 808; *Freeman* v. *Alderson*, 119 U. S. 185; *Heidritter* v. *Oil Cloth Co.*, 112 U. S. 294, 302; Herman on Estoppel, § 327; *Runyan's Appeal*, 27 Pa. St. 121; *Quidort's Adm.* v. *Pergeaux*, 18 N. J. Eq. 472, 477; *Vanderpool* v. *Van Valkenburgh*, 6 N. Y. 190; *Storey* v. *Storey*, 120 Illinois, 244.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

In their ultimate aspect the assignments of error and the propositions based on them all rest on the assumption that the State of Pennsylvania had no jurisdiction over the person or property of the absentee, and therefore the proceedings for the appointment of the administrator and all acts done by him were void and subject to collateral attack. But to uphold this contention, in a broad sense, would be to deny the possession by the various States of powers which they obviously have the right to exert. That the debt due the absentee by the School District, resulting from the establishment of her dower, was within the jurisdiction of the state authority, is clear. It would undoubtedly have been subject to administration under the laws of Pennsylvania had the absentee been in fact dead. *Wyman* v. *Halsted, Administrator*, 109 U. S. 654, 656; *Sayre* v. *Helme*, 61 Pa. St. 299; *Mansfield* v. *Mc-Farland*, 202 Pa. St. 173, 174. The debt was certainly subject to taxation, and, being so subject, had it been taxed, the State would have had power to provide remedial process for the collection of the tax. *Savings Society* v. *Multnomah County* 169 U. S. 421, 428; *Bristol* v. *Washington County*, 177 U. S. 133. Moreover it would have been in the power of the State to subject the debt to attachment at the instance of a creditor of the absentee. *Harris* v. *Balk*, 198 U. S. 215. And that the law

of Pennsylvania would have authorized such an attachment
is also clear. *Furness* v. *Smith*, 30 Pa. St. 520, 522. It may
not also be doubted that the State of Pennsylvania had au-
thority to enact an applicable statute of limitations.

Shrinking from the conclusion to which the assertion of the
want of jurisdiction in the State over the debt logically leads,
the foregoing propositions are not seriously disputed. It is,
however, insisted that they are not determinative of the power
of the State to provide for the administration of the property
of a person who, having been domiciled in the State, has ab-
sented himself for an unreasonable time, leaving no trace of
his whereabouts. The contentions on this subject are thus
stated in the brief of counsel:

"In a word, the case before the court is one in which the
private property of one person was, without her knowledge
or consent, transferred to another who in reality had no shadow
of a right to it, by virtue of an *ex parte* proceeding of which the
owner had no lawful notice. Is it possible that such a mani-
fest infringement of the fundamental and inherent rights which
belong to every person in the use and enjoyment of his private
property can be construed to be due process of law?"

Again:

"If the plaintiff's departure from Pennsylvania and her
omission to demand her arrearages for the period of eleven
years, work an injury to any one, it was to herself alone and not
to any public right such as would bring this case within the
police power of the State. Plaintiff was under no legal obli-
gation to remain in Reading."

It will be observed that the propositions challenge the au-
thority of the State to enact the statute which formed the
basis of the proceedings, not only because it is insisted that
there was a complete want of power to do so, but also because,
even if the State had power, the method of procedure which
the statute authorized was so wanting in notice as not to
constitute due process of law. We shall consider these ob-
jections separately:

1st. Was the state statute providing for the administration of the property of an absentee under the circumstances contemplated by the statute so beyond the scope of the State's authority as to constitute a want of due process of law within the intendment of the Fourteenth Amendment? That the Amendment does not deprive the States of their police power over subjects within their jurisdiction is elementary. The question then is, not the wisdom of the statute, but whether it was so beyond the scope of municipal government as to amount to a want of due process of law. The solution of this inquiry leads us therefore to consider the general power of government to provide for the administration of the estates of absentees under the conditions enumerated in the Pennsylvania law. We do not pause to demonstrate, by original reasoning, that the right to regulate concerning the estate or property of absentees is an attribute, which, in its very essence, must belong to all governments, to the end that they may be able to perform the purposes for which government exists. This is not done, because we propose rather to test the question by ascertaining how far such authority has been deemed a proper governmental attribute in all times and under all conditions. If it be found that an authority of that character has ever been treated as belonging to government and embraced in the right to protect and foster the well-being and order-of society, it must follow that that which has at all times been conceded to be within the power of government, cannot, in reason, be said to be so beyond the scope of governmental authority that the exertion of such a power must be held to be a want of due process of law, even although there is no constitutional limitation affecting the exercise of the power. Whilst it may be that under the Roman Law there was no complete and coherent system provided for the administration of the estate of an absentee, Toullier, title 1, No. 379; Duranton, title 1, No. 384, it is nevertheless certain that absence, without being heard from for a given length of time, authorized the appointment of a curator to protect and administer an

estate.   See the references to the Roman Law on that subject
in Domat, liv. 2, tit. 2, section 1, No. 13.   That in the ancient
law of France, under varying conditions, the same govern-
mental right was recognized is also undoubted.   Journal du
Palais Rep. Verbo Absence, p. 20, from No. 9 to 25. · In the
Code Napoleon the subject is especially provided for under a
title treating of absence, in which ample provision is made for
the administration of the property of the absentee, the law
providing for, first, the provisional and ultimately the final
distribution of such property in accordance with the restric-
tions and regulations which the title provides.   Code Nap.
title 4, article 112 *et seq.*   Demolombe, in generally treating
upon the subject, thus expounds the fundamental conceptions
from which the power of government on the subject is de-
rived:

"Three characters of interest invoke a necessity for leg-
islation concerning this difficult and important subject.
First. The interest of the person himself who has disappeared.
If it is true that generally speaking every person is held at his
own peril to watch over his own property, nevertheless the
law owes a duty to protect those who from incapacity are
unable to direct their affairs.   It is upon this principle of public
order that the appointment of tutors to minors or curators to
the insane rests.   It is indeed natural to presume that a person
who has disappeared, if he continues to exist, is prevented
from returning by some obstacle stronger than his own will,
and which, therefore, places him in the category of an incapable
person, whose interest it is the duty of the law to protect.
And it is for this reason that the provisions as to absence in
the code are placed in the chapter treating of the status of
persons because the absentee, in the legal sense, is a person
occupying a peculiar legal status.   Second. The duty of the
lawmaker to consider the rights of third parties against the
absentee, especially those who have rights which would de-
pend upon the death of the absentee.   Third.   Finally, the
general interest of society which may require that property

does not remain abandoned without some one representing it and without an owner. . . ."

And it may not be doubted that the power to deal with the estate of an absentee was recognized and exerted not only by the common law of Germany, but also by the codes of the various States of the continent of Europe. De Saint Joseph Concordance entre les Codes Civils Etrangers et le Code Napoleon, vol. 1, page 11.

Provisions similar in character to those of the Code Napoleon were incorporated in the Civil Code of Louisiana of 1808 under the head of absentees in book 1 of that code, defining the status of persons, and such provisions have been in force from that day to the present time. Louisiana Civil Code, article 47, *et seq.* The provisions of that code on the subject were referred to by this court in *Scott* v. *McNeal,* 154 U. S. 34, 41. Under the law of England, as stated in that case, a presumption of death arose from an absence of seven years without being heard from; and whilst it is true, as we shall hereafter have occasion to say, that such presumption was not conclusive and was rebuttable, nevertheless the very fact of the presumption occasioned by absence, irrespective of the force of the presumption, was a manifestation of the power to give legal effect to the status arising from absence.

As the preceding statement shows that the right to regulate the estates of absentees, both in the common and civil law, has ever been recognized as being within the scope of governmental authority, it must follow that the proposition that the State of Pennsylvania was wholly without power to legislate concerning the property of an absentee, is without merit, unless it be that the authority of a State over the subject is restrained by some constitutional limitation. That the constitution of Pennsylvania does not put such a restriction, is foreclosed by the decision of the Supreme Court of Pennsylvania in this case. But it is insisted, conceding that the State of Pennsylvania had power to provide for the administration of the property of an absentee, yet that authority could not

be exerted without violating the due process clause of the
Fourteenth Amendment if the administrative proceeding,
brought into play under the exercise of the authority, is made
binding upon the absentee if it should subsequently develop
that he was alive when the administration was initiated. To
sustain this proposition numerous decisions of state courts of
last resort are relied upon, which are enumerated in the margin,[1]
and special reliance is placed upon the decision of this court
in *Scott* v. *McNeal, supra*. We are of opinion, however, that
the cases relied upon, with one or two exceptions hereafter to
be noticed, are inapposite to this case. The leading cases
were reviewed in *Scott* v. *McNeal*, and their inapplicability to
the present case will therefore be demonstrated by a brief
consideration of *Scott* v. *McNeal*.

In that case a probate court in the State of Washington had
issued letters of administration upon the estate of a person
who had disappeared, and proceeded to administer his estate
as that of a dead person upon the presumption of death, which
the court assumed had arisen from his absence. There was
no statute of the State of Washington providing for an ad-
ministration of the estate of an absentee as such, and creating
rights and safeguards applicable to that situation, as distinct
from the general law of the State, conferring upon courts of
probate power to administer the estates of deceased persons.
Referring to the presumption under the law of England of

---

[1] *French* v. *Frazier's Adm'r*, (1832) 7 J. J. Marsh, 425, 432; *State* v. *White*,
(1846) 7 Ired: 116; *Duncan* v. *Stewart*, (1854) 25 Alabama, 408, 414; *Moore*
v. *Smith*, (1858) 11 Rich. (Law) 569; *Jochumsen* v. *Suffolk Savings Bank*,
(1861) 3 Allen, 87; *Morgan* v. *Dodge*, (1862) 44 N. H. 255, 259; *Withers* v.
*Patterson*, (1864) 27 Texas, 491, 498; *Quidort's Adm'r* v. *Pergeaux*, (1867)
3 C. E. Green, (18 N. J. Eq.) 472, 477; *Melia* v. *Simmons*, (1878) 45 Wis-
consin, 334, 337; *D'Arusment* v. *Jones*, (1880) 4 Lea (72 Tenn.), 251; *Devlin*
v. *Commonwealth*, (1882) 101 Pa. St. 273; *Stevenson* v. *Superior Court*,
(1882) 62 California, 60, 65; *Thomas* v. *The People*, ( 1883) 107 Illinois, 517;
*Perry, Adm'r*, v. *St. Joseph & W. R. Co.*, (1883) 29 Kansas, 420, 423; *Epping*
v. *Robinson*, (1884) 21 Florida, 36, 49; *Martin* v. *Robinson*, (1887) 67 Texas,
368; *Springer* v. *Shavender*, (1895) 116 N. Car. 12; S. C., 118 N. Car. 33;
*Carr* v. *Brown*, (1897) 20 R. I. 215; *Clapp* v. *Houg*, (1904) 12 N. Dak. 600.

death arising from absence, it was held that such presumption was not conclusive, and was absolutely rebutted by proof that the person who was presumed from the fact of absence to be dead was, in fact, alive. Having established this proposition, it was then held, as death was essential to confer jurisdiction on a probate court to administer an estate as such, the fact of life at the time the administration was initiated conclusively rebutted the presumption and caused the court to be wholly without jurisdiction to administer the estate of a person who was alive. This conclusion was abundantly sustained by a citation of the English and American adjudications, in none of which was the doctrine upon which the case proceeded more cogently stated than in the opinion of this court, speaking through Chief Justice Marshall, in *Griffith* v. *Frazier,* 8 Cr. 9, 23. That the opinion, however, in *Scott* v. *McNeal* was not intended to and did not imply that the States were wholly devoid of power to endow their courts with jurisdiction under proper conditions to administer upon the estates of absentees, even though they might be alive, by special and appropriate proceedings applicable to that condition as distinct from the general power to administer the estates of deceased persons, is conclusively shown by the opinion in *Scott* v. *McNeal.* Thus, the law of Louisiana, providing for the administration of the property of absentees, as distinct from the authority conferred to administer the estates of deceased persons, was approvingly referred to. And, moreover, as showing that it was deemed that the absence of legislation by the State of Washington of a similar character was the determinative factor in the case, the court said (p. 47):

"The local law on the subject, contained in the Code of 1881 of the Territory of Washington, in force at the time of the proceedings now in question, and since continued in force by article 27, section 2, of the constitution of the State, does not appear to us to warrant the conclusion that the probate court is authorized to conclusively decide, as against a living person, that he is dead, and his estate therefore

subject to be administered and disposed of by the probate court.

"On the contrary, that law, in its very terms, appears to us to recognize and assume the death of the owner to be a fundamental condition and prerequisite to the exercise by the probate court of jurisdiction to grant letters testamentary or of administration upon his estate, or to license any one to sell his lands for the payment of his debts."

After copiously reviewing the Washington statutes and pointing out that they dealt with the estates of deceased persons as such, the case was summed up in the following language:

"Under such a statute, according to the overwhelming weight of authority, as shown by the cases cited in the earlier part of this opinion, the jurisdiction of the court to which is committed the control and management of the estates of deceased persons, by whatever name it is called, ecclesiastical court, probate court, orphans' court, or court of the ordinary or the surrogate, does not exist or take effect before death. All proceedings of such courts in the probate of wills and the granting of administrations depend upon the fact that a person is dead, and are null and void if he is alive. Their jurisdiction in this respect being limited to the estates of deceased persons, they have no jurisdiction whatever to administer and dispose of the estates of living persons of full age and sound mind, or to determine that a living man is dead and thereupon undertake to dispose of his estate."

True it is that there are some general expressions found in the opinion (p. 50), which, if separated from the context of the opinion, might lead to the conclusion that it was held that a State was absolutely without power to provide by a special proceeding for the administration and care of the property of an absentee, and to confer jurisdiction on its courts to do so, irrespective of the fact of death. But these general expressions are necessarily controlled by the case which was before the court, and by the context of the opinion, which makes it

clear that it was alone decided that under a law giving jurisdiction to probate courts to administer the estates of deceased persons, even although a rebuttable presumption existed as to death after a certain time, that if such presumption was subsequently rebutted by the proof of the fact of life that the court, whose authority depended upon death, was devoid of jurisdiction.

We have said that two of the cases relied upon would be separately noticed. Those cases are *Carr* v. *Brown*, 20 R. I. 217, and *Clapp* v. *Houg*, 12 N. Dak. 600. In the first case there was a statute of Rhode Island providing for administration under the presumption of death after an absence of seven years, and it was decided that the statute was void. The opinion leads to the view that the conclusion of the court was primarily based upon the construction that the statute did not create a conclusive presumption conferring jurisdiction in the event the absentee was alive and not dead. In the second case there was also a statute of the State of North Dakota, but the court held it to be void, because of the inadequacy of the notice for which it provided. There are, in both of the cases, expressions tending to the view that the State was without power to provide by special legislation for the administration of the property of an absentee. In so far, of course, as these views were rested upon the state constitution, we are not concerned with them. In so far, however, as they intimate that by the operation of the Fourteenth Amendment the States are deprived of power to legislate concerning the estates of absentees, we do not approve them.

The error underlying the argument of the plaintiff in error consists in treating as one two distinct things, the want of power in a State to administer the property of a person who is alive, under its general authority to provide for the settlement of the estates of deceased persons, and the power of the State to provide for the administration of the estates of persons who are absent for an unreasonable time, and to enact reasonable regulations on that subject. The distinction between the

two is well illustrated in Pennsylvania, for in that State, prior to the enactment of the statute in question, it had been expressly decided that a court of probate as such was absolutely wanting in jurisdiction to administer the estate of a person who was alive simply because there existed a presumption which was rebuttable as to the fact of death. This is also aptly illustrated by the law of Louisiana. In that State, as we have seen, provisions have existed from the beginning for the administration of the estates of absentees as distinct from the power conferred upon the courts of probate to administer the estates of deceased persons. In this condition of the law, under an averment of death an estate was opened in a probate court of Louisiana and administered upon. A question as to the validity of that administration subsequently arose in *Burns* v. *Van Loan*, 29 La. Ann. 560, 563. As the proceedings were probate proceedings not taken under the statute providing for the administration of the estates of absentees, the Supreme Court of the State of Louisiana declared them to be absolutely void. As it cannot be denied that in substance the Pennsylvania statute is a special proceeding for the administration of the estates of absentees distinct from the general law of that State providing for the settlement of the estates of deceased persons, and as by the express terms of the statute jurisdiction was conferred upon the proper court to grant the administration, it follows that the Supreme Court of Pennsylvania, did not deprive the plaintiff in error of due process of law within the intendment of the Fourteenth Amendment.

2d. It remains only to consider the contention that even although there was power to enact the statute, it is nevertheless repugnant to the Fourteenth Amendment, because it fails to provide notice as a prerequisite to the administration which the statute authorizes and because of the absence from the statute of essential safeguards for the protection of the property of the absentee which is to be administered. Let it be conceded, as we think it must be, that the creation by a state law of an arbitrary and unreasonable presumption of death

resulting from absence for a brief period, would be a want of due process of law, and therefore repugnant to the Fourteenth Amendment. Let it be further conceded, as we also think is essential, that a state law which did not provide adequate notice as prerequisite to the proceedings for the administration of the estate of an absentee would also be repugnant to the Fourteenth Amendment. Again, let it be conceded that if a state law, in providing for the administration of the estate of an absentee, contained no adequate safeguards concerning property, and amounted therefore simply to authorizing the transfer of the property of the absentee to others, that such a law would be repugnant to the Fourteenth Amendment. We think none of these concessions are controling in this case. So far as the period of absence provided by the statute in question, it certainly cannot be said to be unreasonable. So far as the notices which it directs to be issued, we think they were reasonable. As concerns the safeguards which the statute creates for the protection of the interest of the absentee in case he should return, we content ourselves with saying that we think, as construed by the Supreme Court of Pennsylvania, the provisions of the statute do not conflict with the Fourteenth Amendment.

*Affirmed.*