WILLIAM B. GREENOUGH, Attorney General *vs.* PEOPLES SAVINGS BANK.

JULY 2, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1) *Banks and Banking. Abandoned Property of Absentee. Constitutional Law.*

Gen. Laws, 1909, cap. 237, § 17, and Pub. Laws, 1909, cap. 404, provide that the treasurer of every savings bank and bank or trust company as to its savings department shall at stated periods return a statement with details of every depositor who shall not have made or withdrawn any deposit or interest thereon or whose bank book has not been presented for entry of interest, for a period of twenty years, and that at the expiration of six months from the first publication of such statement, the attorney general shall file a petition following the course of equity praying that such deposits with the increase thereof be paid to the general treasurer subject to repayment to one establishing his right thereto.

The charter of a savings bank provided that all deposits should be used to the best advantage and the income should be applied and divided among the persons making the deposits their heirs, etc., in just proportion and that all accounts on which no deposits or drafts had been made for twenty years should be so far closed that neither the sum deposited nor the interest accrued should be entitled to any interest after the expiration of twenty years from the time of the last deposit or draft, and that deposits might be withdrawn in such manner as the bank should direct.

*Held,* that said acts were not obnoxious to Cons. R. I., Art. I, § 12, "No ex post facto law or law impairing the obligation of contracts, shall be passed," nor to Art. I, § 16, "Private property shall not be taken for public uses, without just compensation;" nor to Cons. U. S., Art. I, § 10, "No state shall . . . pass any ex post facto law, or law impairing the obligation of contracts."

*Held,* further, that the power of the State to pass such act rests on its right to provide for the care of property the owners of which have not been heard from for so long as to raise the presumption that they have either died or have abandoned the property.

*Held,* further, that the charter of the bank and the contract between the bank and its depositors must be assumed to have been subject to the sovereign power of the State to take in to its care property abandoned by its owner, when an absentee from the State leaving no one to represent him for many years and when he cannot be found.

(2)   *Statutes.   Procedure.*

*Held,* further, that the statute implied a legal and proper course of procedure, for where provision was made for the filing of the petition following the course of equity, there is a necessary implication that the court will hear the petition before making any order.

(3)   *Banks and Banking.   Statutes.   Abandoned Property of Absentee.*

*Held,* further, that as under the charter no interest would have accrued after twenty years from the last act of the depositor with relation to the deposit, no interest after that time would, under the act, be paid to the general treasurer.

(4)   *Banks and Banking.   Abandoned Property of Absentee.   Rights of Depositors.*

*Held,* further, that the other depositors had no greater property rights in the deposits which had ceased to draw interest than the bank had.

(5)   *Constitutional Questions.*

A constitutional question cannot be brought before the court on stipulation of parties, and where it has not been certified under Gen. Laws, 1909, cap. 298, it will not be considered.

Petition following the course of equity. Certified on constitutional questions under General Laws, 1909, cap. 298.

Johnson, C. J.   This is a petition following the course of equity, filed by the Attorney-General against the Peoples Savings Bank, located in the city of Providence, in the State of Rhode Island, praying that certain unclaimed deposits therein be paid to the General Treasurer. The statute under the authority of which said proceeding was instituted is Section 75½ added to Chapter 1590, Public

Laws, of 1908, by amendment by Chapter 404 of the Public Laws passed April 30, 1909.

Section 75 of said Chapter 1590 reads as follows:

"SEC. 75. The treasurer of every savings bank and the treasurer of every bank and trust company as to its savings or participation department shall, during the month of July, in the year nineteen hundred and eight, and every fifth year thereafter, return to the bank commissioner a sworn statement containing the name, last known place of residence or post-office address, and fact of death, if known to such treasurer, of every depositor who shall not have made a deposit therein or withdrawn therefrom any part of his deposit or any part of the interest thereon, or whose bank-book has not been presented for entry thereon of accrued interest, for a period of twenty years or more next preceding the last business day of June, and shall publish the same, in one or more newspapers published in or nearest to the city or town wherein such institution is located, at least once a week for six weeks in succession: *Provided, however*, that this section shall not apply to deposits made by or in the name of any person known to the officers of said corporation to be living and of sound mind. The bank commissioner shall incorporate in his report, or in a supplementary report, each return which shall have been made to him as provided in this section. The treasurer of any corporation neglecting or refusing to make the sworn return and publication required by this section shall be subject to a fine of one hundred dollars for each offence."

Section 75½ is as follows:

"SEC. 75½. At the expiration of six months from the first publication in one or more newspapers mentioned in the preceding section the attorney-general, in the name and behalf of the State, shall forthwith file in the Superior Court, within and for the county of Providence, a petition following the course of equity, praying that all such advertised deposits unclaimed by any depositor or his representatives, or where such depositor is unknown to the officers of said

corporation to be living and of sound mind, at the time of the filing of said petition, shall, with the increase and proceeds of such deposits, be paid to the general treasurer, to be held and used by him according to law, subject to be repaid to the person having and establishing a lawful right thereto, with interest at the rate of three per centum per annum from the time any such sum was so paid to said general treasurer to the time when it is paid over by him to such person.  Any person claiming a right to money so ordered by said Superior Court to be paid to said general treasurer, may establish such right by a petition, to said Superior Court within and for the county of Providence, following the course of equity.  Such petition shall be filed against the State, and service of process shall be made upon the attorney-general in person or at his office.  The attorney-general shall appear and represent the State in such proceeding. In case of final determination in favor of the petitioner, the clerk of the Superior Court shall certify the amount of said determination, with costs, to the general treasurer for payment.  In case said petition shall be determined in favor of the State, said determination shall operate as a final bar against said claimant or his representatives."

The cause has been certified to this court by the Superior Court on constitutional questions brought upon the record in paragraphs 3 and 4 of the answer of Herbert Almy, an intervenor, in which it is alleged:

"That by the charter of said bank which is made a part of the contract of deposit, 'All deposits of money received by said corporation shall be used and improved to the best advantage, and the income or profits thereof shall be by them applied and divided among the persons making the said deposits, their heirs, executors, administrators in just proportion, with such reasonable deduction as the management of the affairs of said corporation may require, and the principal of such deposits may be withdrawn at such times and in such manner as said corporation shall direct.  And all accounts on which no deposits or drafts shall be made for

twenty years in succession, shall be so far closed that neither the sum deposited nor the interest which shall have accrued thereon, shall be entitled to any interest after the expiration of twenty years from the time of the last deposit or draft.'

"A copy of said charter and by-laws of said bank is hereto annexed made part of this answer and marked exhibit 'A.'

"That this respondent, together with all other depositors, excepting those accounts on which no deposits or withdrawals have been made for more than twenty years, in succession, are entitled to their just proportion of the income and profits from all deposits with such reasonable deduction as the management of the affairs of the Peoples Savings Bank may require.

"That the act of the General Assembly of the State of Rhode Island, passed at its January session, A. D. 1909, entitled 'An Act in addition to Chapter 1590 of the Public Laws, passed at the January session, A. D. 1908, entitled 'An Act to provide for the incorporation and regulation of Banks, Savings Banks and Trust Companies," under which the petition in the above entitled case is filed, is unconstitutional and void because in conflict with Sections 12 and 16 of Article I of the Constitution of this State, and Section 10, Article I of the Constitution of the United States, to which said answer is annexed a copy of the charter and by-laws of said defendant bank, of which another copy marked exhibit 'B' is hereto annexed."

(1)    Said sections of Article I of the Constitution of Rhode Island are: "Sec. 12. No *ex post facto* law, or law impairing the obligation of contracts, shall be passed," and "Sec. 16. Private property shall not be taken for public uses, without just compensation." The provision of Article I, Section 10 of the Constitution of the United States, with which the statute is claimed to be in conflict, we take to be the following: "No state shall . . . pass any *ex post facto* law, or law impairing the obligation of contracts."

The intervenor says in his. brief: "It is quite evident that the person framing the Act, Section 75½ had some similar statute in mind which he endeavored to adapt to the provisions of the existing law, for there is an evident omission on his part to empower any court to hear and determine the petition which the section directs the attorney-general to file. So far as the bank, the depositor or any person interested in such deposit is concerned the section stops, with the description of the prayer of the petition which the attorney-general is, to file. As the statute is in contravention of common law rights it must be strictly construed and nothing should be left to inference. 'Courts can not supply legislative defects and omissions, although by reason of such, the statute becomes, in whole or in part, practically unenforceable or inoperative.' Endlich on the interpretation of statutes, par. 22. A law which provides for the taking of private property must provide for some kind of notice, and offer to the owner an opportunity to be heard, or the proceeding will want the essential ingredient of due process of law. *In re Railroad Tax Cases*, 13 Fed. 722.

"Article I, Section 12 of the constitution of Rhode Island, provides: 'Sec. 12. No *ex post facto* law, or law impairing the obligation of contracts shall be passed.'

"By signing the books of the bank and making the deposit, the depositor becomes a party to a contract with the bank for the use of the money deposited, the terms of which contract are set forth in the charter as hereinbefore recited.

"Section 5 of the charter which provides that all income or profits from deposits shall be applied and divided among the persons making said deposits, their heirs, &c., in just proportion with reasonable deduction for expenses, taken in connection with Sec. 6 of the charter which provides that all accounts on which no deposits or drafts shall be made for twenty years in succession shall be so far closed that neither the sum deposited nor the interest which shall have accrued thereon, shall be entitled to any interest after the expiration of twenty years from the time of the last deposit or draft

gives to every depositor in said bank excepting those upon whose account there have been no deposits or drafts for twenty years in succession, a right to share in the income or profits derived from all such closed accounts, this right having accrued to the depositor cannot be taken away by any act of the legislature passed after the accrual of such right. *In re Voting Laws*, 12 R. I. 586, at 593.

"Section 5 of the charter of said bank also provides, and this is made a part of the contract of deposit, that 'the principal of such deposits may be withdrawn at such times and in such manner as said corporation shall direct,' and afterwards in the regulations for the management of the affairs of said corporation which regulations are made a part of the charter, it is provided, 'deposits shall only be withdrawn by the depositor or some person by him legally authorized, but no person shall receive any part of his principal or dividends without producing the original book, that such payment may be entered thereon . . . and one week's notice of the intention of withdrawing the same shall be given to the treasurer in writing.'

"It is respectfully submitted that Chapter 404 of the Public Laws of R. I., in ordering the payment of these deposits to the general treasurer, without making any provision for these charter requirements, is clearly in contravention of the provisions of the contract of deposit.

"1. By requiring the bank to pay over the deposit to some one not the depositor or some person by him legally authorized.

"2. By requiring the deposit to be paid to the general treasurer without producing the original book.

"3. By requiring the deposit to be paid to the general treasurer without giving the treasurer of the bank the notice required by the charter.

"4. By requiring the increase and proceeds of such deposits, a part of which have accrued and already been distributed among the other depositors, pursuant to the contract of deposit, to be paid to the general treasurer.

"Section 16 of said Article I of the Constitution of Rhode Island, provides: 'Sec. 16.   Private property shall not be taken for public use without just compensation.'

"The language of Section 75½ of Chap. 404 is 'be paid to the general treasurer, to be held and used by him according to law, subject to be repaid to the person having and establishing a lawful right thereto, with interest, &c., Since the general treasurer can only use the money according to law for public uses, it follows that this money is taken for public uses, at least, until it shall be reclaimed in the manner provided by the statute.   The act cannot be justified on the ground of an escheat, because it is not predicated upon the fact of death without any known heirs, and if it were so predicated the statute in force at the time of the filing of the petition in this case, gives the beneficial interest in all such cases to the several towns in which such personal estate may be located until the heir or other legal representative of such deceased person shall call for the same.   Gen. Laws, 1909, Chap. 317, § 1; *Att'y.-Gen. v. City of Providence,* 8 R. I. 8; *Haigh et al.* v. *Haigh,* 9 R. I. 26.

"Chapter 404 proceeds upon the theory that the advertisement of the sworn statement required to be made by the treasurer of every savings bank and trust company as to its savings or participation account, in Sec. 75 of Chap. 1590, together with the fact that such advertised deposits are unclaimed or the depositor is unknown to the officers of said corporation to be living and of sound mind, at the time of the filing of the petition, is *prima facie* evidence of an abandonment of the deposit.

"It is respectfully submitted that such is not the fact, in the case of savings banks, because they are established with a view of safe keeping the earnings of the depositor for long terms, and in many cases the depositor removes to a distant part of the country resting secure in the knowledge that he has a fund deposited with an institution which has perpetual succession and in which he has confidence that he can return at any time and find his deposit awaiting him."

He cites *Attorney-General* v. *Providence* (*supra*), 8 R. I. 8,. at 14. The headnote of this case reads: "An act, entitled 'An act securing the estates of persons dying, leaving real. or personal estate within the State, and leaving no known. heirs, or others entitled to distribution within the United. States,' found in the digest of 1798, p. 310, being Chapter 160. of the Revised Statutes, vests the beneficial interest in: estates escheated from the dying intestate and without heirs of the person last seized of the same,. in the towns which take possession and charge of such estates, in conformity with the act; and when thus vested, such interest, cannot be recalled by the General Assembly."

He further argues that "Money deposited in a savings: bank becomes the property of the corporation. 'The depositor is a creditor for the amount of the deposit, which. the corporation becomes liable to pay according to the: terms of the contract under which it is made.' Hale on. Bailments, &c., 40, note 12, cited from *People* v. *Mechanics,. &c., Sav. Inst.*, 92 N. Y. 7. 'The profits of an ordinary savings bank after deducting the expenses of managing it,. inure wholly to the benefit of the depositors, and must be: distributed as dividends or reserved as a surplus for their greater security.' 1 Morawetz on Private Corporations, par. 391. 2 Morse on Banks and Banking (3rd ed.), par. 617. It therefore follows that this intervenor has a right to the· increase or profit from all those accounts which are so far· closed as not to be entitled to share in the profits of the: corporation, under the terms of the contract of deposit,. at least all such as have accrued before the filing of the: petition in this case, in common with all the other depositors: who have not withdrawn their deposits. The statute. requires that all such advertised deposits shall, 'with the· increase and proceeds of such deposits, be paid to the general treasurer, to be held and used by him according to law,' which would include all increase and profits accruing after the expiration of the twenty-year limit to the time of filing the petition, as well as those accrued before that time

and in so far would be a taking of the private property of this intervenor.  If the statute is void as to part it is void as to the whole.

"The only notice provided by the act is in the publication of the return to the bank commissioner provided in Section 75 of the act.  That notice did not contemplate the payment to the general treasurer, but simply notice to the depositor or his legal representatives of the fact of such deposit."

It has been decided by the Supreme Judicial Court of Massachusetts, and on writ of error by the Supreme Court of the United States that a statute substantially identical with the present one, except that the period of non-claim was thirty years instead of twenty, is constitutional.  *Attorney-General* v. *Provident Institution*, 201 Mass. 23; *Provident Institution* v. *Malone*, 221 U. S. 660.  The constitutional provisions which were claimed to be violated were the same in the Federal Constitution, and were the provisions of the Massachusetts Declaration of Rights, Section 10 and 12 corresponding to the provisions of the Constitution of Rhode Island here claimed to be violated.

The power of the State to pass such an act rests on its right to provide for the care and custody of property the owners of which have not been heard from for so long as to raise the presumption that they have either died or have abandoned the property.  It is under this principle that the towns, by virtue of Chapter 317 of the General Laws, take possession of the real and personal property of one who dies without known heirs or legal representatives, and are accountable only for the principal, but not including any income or interest received therefrom if the heirs or next of kin appear.  See, also, Gen. Laws, Chap. 315, as to the appointment of a receiver for the estate of an absentee.

In *Attorney-General* v. *Provident Institution for Savings* (*supra*), the principal argument of the respondent was in support of six propositions:

"*One*. The Legislature cannot substitute another person for the person with whom the depositor made his original contract.

"*Two*. The Legislature cannot substitute a right to the whole of a small fund for a proportional share of a deposit in a very large one.

"*Three*. The legislature cannot turn a *cestui que trust* of the savings bank into a mere creditor of the State.

"*Four*. The Legislature cannot impair the depositor's right to interest.

"*Five*. The Legislature cannot deprive the respondent of the right to retain the deposits until called for by the owners.

"*Six*. The Legislature cannot deprive a bank of its right to do business in accordance with the terms of its charter."

The court said: "The argument in support of these propositions seems to assume that the contract between the respondent and each depositor was made to continue for all time, even if the depositor should die, leaving no heirs, so that his property would escheat to the Commonwealth under the R. L. c. 140, § 3, or should absent himself for many years from the Commonwealth, leaving no one to represent him or care for his estate, and should abandon his property altogether. On the contrary the charter granted to the Institution for Savings and the contract between the institution and its depositors must be assumed to have been subject to the soverign power of the Commonwealth, through proper proceedings, to take possession of property that escheats to the Commonwealth and hold it as its own, and also to take into its care and custody property abandoned by its owner, when he is an absentee from the Commonwealth, leaving no one to represent him for many years, and cannot be found. The right of the Commonwealth, in its sovereign power, so to take property into its control under such circumstances, is well established. *Nelson* v. *Blinn*, 197 Mass. 279; *Cunnius* v. *Reading School District*, 198 U. S. 458; S. C. 206 Penn. St. 469, *Deaderick* v. *County Court*, 1 Cold. (Tenn.), 202. The contract between the corporation and each depositor, by an implied condition, was to be

subject to termination by the Commonwealth whenever conditions should arise that would justify the State in exercising this power to take the property into its care for the benefit of the persons entitled to it, and when the Commonwealth, in view of these conditions, should assert this power. There is nothing in the respondent's charter that limits the right of the Commonwealth in these particulars. By the act of the Legislature the corporation was authorized to receive deposits of money, and to use and improve them to the best advantage for the persons making the deposits. . . . The ownership of property by the depositors, and the right of the Commonwealth to deal with property within its jurisdiction, are not affected by the statute.

"The property is within the Commonwealth and subject to its jurisdiction. The obligation of a savings bank, chartered in Massachusetts, to one of its depositors, is property subject to the jurisdiction of the State, as much as any tangible chattel. *Blackstone* v. *Miller*, 188 U. S. 189. *Cunnius* v. *Reading School District*, 198 U. S. 458; S. C. 206 Penn. St. 469. If the court, under the R. L. c. 144, as amended by the St. 1904, c. 206, had appointed a receiver of the property of any one of these depositors as an absentee from the Commonwealth, there is no doubt that he would have been entitled to collect the money from the respondent and hold it, under the doctrine stated in *Nelson* v. *Blinn, ubi supra.* Most of the questions raised by the above quoted propositions could be raised as well, in objecting to the constitutionality of the proceedings, if the suit were brought against the savings bank by a receiver appointed under that statute. Such a suit would be founded on the Commonwealth's right to take possession of the abandoned property of an absentee. All the conditions necessary to the exercise of this right must exist before action can be taken under the statute now before us. Thirty years must elapse after the last act of the depositor in relation to his deposit; and the deposit must be one for which no claimant is known, or of which the depositor cannot be found. These facts show,

at least *prima facie*, that there is no owner in charge or care of the property, and seemingly that it has been abandoned. The last known owner is an absentee, within the meaning of the word as used in the decisions above referred to. The length of time that the property has been left, without any action by him in regard to it, furnishes a strong presumption that, willingly or unwillingly, or ignorantly, he has permanently abandoned it. Such facts give the State jurisdiction to take it in charge.

"There is nothing unconstitutional in the disposition made of it under the statute. It is to be held and used by the treasurer and receiver general according to law, but all the time in recognition of the rights of the owner, and of the necessity of repaying it to him, with interest, when he established his lawful right thereto. The Commonwealth, under the statute, becomes a kind of trustee for the owner. The security of the owner is ample." *Mutatis mutandis*, this reasoning applies with equal force to the case at bar. Here the time which must elapse after the last act of the depositor in relation to his deposit is twenty years, but the same principles are involved.

The intervenor suggests that there is an evident omission in the statute to empower any court to hear and determine the petition which the section directs the Attorney-General (2) to file. He says, "So far as the bank, the depositor or any person interested in such deposit is concerned, the section stops with the description of the prayer of the petition which the Attorney-General is to file." The statute provides that the Attorney-General in the name and behalf of the State shall file in the Superior Court within and for the county of Providence a petition following the course of equity, &c. Chapter 289, Gen. Laws, 1909, provides for the practice in equity causes and in cases following the course of equity. Section 2 provides that "Subpœnas and citations in equity causes and in all cases following the course of equity shall, unless otherwise ordered or provided by law, be made returnable at any time within thirty days from the date of

their issue, at the option of the complainant taking out the same." Section 3 provides that "In special cases, on motion to a justice of the Superior Court, the return-day, the time and the method of service, may be specially ordered, or the time for such service extended and a new return-day fixed." And where provision is made in the statute for the filing of a petition following the course of equity, there is a necessary implication that the court will hear the petition before making the order. The court can be trusted to apply the statute properly under the rules of law. The statute implies a legal and proper course of procedure.

As to the contention that said Section 75½ in ordering payment of these deposits to the General Treasurer without making any provision for the charter requirements is clearly in contravention of the provisions of the contract of deposit in requiring the bank to pay over the deposits to some one not the depositor or some person by him legally authorized and requiring the deposit to be paid to the General Treasurer without producing the original book and in requiring the deposit to be paid to the General Treasurer without giving the treasurer of the bank the notice required by the charter and in requiring the increase and proceeds of such deposits, a part of which have accrued and already been distributed among the depositors pursuant to the contract of deposit, to be paid to the General Treasurer, we think the charter granted to the savings bank and the contract between the institution and the depositors must be regarded as subject to the power of the State in a proper proceeding to take possession of property abandoned by its owner.

(3) We think, however, that the intervenor is in error in construing the act as requiring the increase and proceeds of such deposit, a part of which, as he says have accrued and already been distributed among the depositors pursuant to the contract of deposit, to be paid to the General Treasurer. The interest having stopped after the expiration of the period of twenty years from the time of the last deposit or withdrawal or act of the depositor with relation to the

deposit, no interest would have accrued on said deposit after that time and we cannot construe the act as requiring interest on such deposit after that time to be paid to the General Treasurer.

(4)    As to the argument of the intervenor that the provisions of the charter give to every depositor in said bank, excepting those upon whose account there have been no deposits or drafts for twenty years in succession, a right to share in the income or profits derived from all such closed accounts and that this right having accrued to the depositor cannot be taken away by any act of the legislature passed after the accrual of such right, there was a similar provision in the by-laws in *Provident Savings Institution* v. *Malone*, 221 U. S. 660, the provision being that no interest should be paid on sums above $1,600. The court, p. 665, said: "But this is a matter with which the plaintiff in error is not concerned and can arise only between the State and the claimant when he asserts a right to property long neglected and apparently abandoned.

"But the bank insists that there has been no abandonment; that the money is in safe hands where it was originally left, under by-laws which contemplated that the deposit might remain in the bank without interest on sums over $1,600 until the corporation was dissolved. It contends that to deprive it of the benefit of such deposits is to take property without due process of law.

"But while there was a possibility that the money might so remain the bank had no right to require that it should be so left. Neither the charter nor the by-laws create anything in the nature of a tontine, under which, on dissolution of the corporation, the then depositors would receive the money of those absent and unknown. On dissolution the shares of a depositor, who could not be found, would be paid over to his legal representative, who might be an administrator in case his death was established, or a guardian, in case of mental incapacity, or a trustee in bankruptcy in case of insolvency, or a representative appointed under statutes applicable to

abandoned property.    But it is not necessary to wait for the dissolution of the bank.    If the facts warrant it a legal representative can be appointed at any time, with all the rights incident to such appointment, including that of withdrawing the funds and holding them for the true owner when he shall establish his claim.

"There is nothing unequal or discriminatory in making the acts applicable only to abandoned deposits in a savings bank.    The classification is reasonable. · Deposits in savings banks are made in expectation that they may remain much longer uncalled for than is usual in deposits in other banks.    This fact makes savings deposits all the more likely to be forgotten and abandoned.    And as the depositors are often wage-earners, moving from place to place, there is special reason for intervening to protect their interest in this class of property in banks as to which the State's supervisory power is constantly exercised."

This reasoning is equally applicable to the case before us.    The depositors have no greater property rights in the deposit which has ceased to draw interest than the bank has.

Counsel have filed a stipulation that the defendant may claim that Chapter 404 of the Public Laws is in conflict with Section 1 of Article XIV of the Amendments to the Constitution of the United States, and Article I, Section 15 of the Constitution of Rhode Island.    A constitutional question cannot be thus brought before this court.    As said questions have not been certified to us under Chapter 298, Gen. Laws, 1909, we cannot consider them.

Our decision is that the statute in question is not in conflict with Section 12 or Section 16 of Article I of the Constitution of Rhode Island, or with Section 10 of Article I of the Constitution of the United States.

The papers in the cause with our decision certified thereon will be sent back to the Superior Court for further proceedings.

*Livingston Ham, Asst. Attorney-General,* for State.
*Herbert Almy,* for respondent.