(No. 14189.—Decree affirmed.)

CLARENCE Y. EDDY, Appellee, *vs.* SEWARD A. EDDY *et al.* Appellants.

*Opinion filed February 22, 1922—Rehearing denied April 13, 1922.*

1. PLEADING—*answer waives objections urged on demurrer.* A defendant, by answering a bill after the overruling of a demurrer, waives the grounds of demurrer except as to such substantial defects as may be taken advantage of on the final hearing.

2. EQUITY—*when decree is void and not merely erroneous.* A decree which deprives a living person of his interest in land on the theory that he is presumed to be dead is void as to such person and not merely erroneous, whether the court was without jurisdiction or whether the decree was obtained by fraud of the other parties, and he may maintain a bill to impeach the decree.

3. SAME—*when court of equity does not acquire jurisdiction of a non-resident.* Jurisdiction of a non-resident by publication and mailing of notice is not shown on a bill by him to impeach a decree where there is no certificate in the files showing a mailing of notice to his last place of residence and no finding in the decree that notice was mailed, and the mere general finding that the court has jurisdiction is not sufficient to establish the fact.

4. PRESUMPTIONS—*presumption of death after seven years' absence is not conclusive.* The continuous absence of a person from his home or place of residence for a period of seven years, during which time nothing is heard from or concerning him, raises a presumption of his death for all legal purposes; but this presumption is not conclusive, and the law cannot deprive an absentee of his estate if he is alive.

5. SAME—*a decree disposing of absentee's interest in an estate must safeguard his interests if he shall be alive.* A decree disposing of an absent person's interest in land upon proof of facts rais-

ing the presumption of his death must contain provisions to safe-guard his interest in case he shall prove to be alive, otherwise the decree is void as to him in the event of his return.

6. PARTITION—*when purchasers are chargeable with notice of rights of party.* Purchasers at a sale of land in a partition suit who are parties to the record do not occupy the position of inno-cent third parties, and they are chargeable with notice of defects in the decree disposing of the interests of an absent defendant on the presumption that he is dead.

7. NOTICE—*parties having actual notice of adverse claim are not innocent purchasers.* Persons who purchase land after actual notice that one of the parties to a partition suit through which their vendors, as parties to the suit and purchasers at the sale, claim title, and whose interest was disposed of in the partition suit on the presumption that he was dead, has turned out to be alive and is claiming his rights, are not as to such person *bona fide* purchas-ers without notice.

APPEAL from the Circuit Court of Whiteside county; the Hon. F. D. RAMSAY, Judge, presiding.

KENWORTHY, DIETZ, SHALLBERG, HARPER & SINNETT, and McMAHON & BELL, for appellants.

L. T. STOCKING, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, Clarence Y. Eddy, filed his bill in this case in the circuit court of Whiteside county to impeach and set aside for fraud, want of jurisdiction and disregard of his constitutional rights, a decree of that court in a parti-tion suit and proceedings thereunder, depriving him of his undivided one-tenth interest in over 400 acres of land in that county. The defendants were Seward A. Eddy, com-plainant in the partition suit; Newell R. Eddy, Lloyd Y. Eddy and Dana O. Eddy, defendants therein, who purchased the premises at the master's sale; Leonard J. Doll, Riely Greth and William J. Doll, their grantees; and R. C. Burch-ell, a mortgagee, who are the appellants. The bill alleged that the appellee was the owner of an undivided one-tenth

of the lands by devise from his father, York Eddy, and that the former proceedings to partition were void as to him for the reasons in the bill and hereafter set forth. The appellants interposed a general and special demurrer to the bill containing nineteen specifications of alleged defects therein, and the demurrer being overruled they then filed a plea to so much of the bill as sought to set aside the former decree for partition, setting forth in the plea the material parts of the procedure in the former suit, and they answered the residue of the bill which' charged fraud in the proceeding. The evidence was heard by the chancellor and a decree was entered according to the prayer of the bill, finding that the former decree and all proceedings subsequent thereto were void as against the appellee but were binding on the other parties to the suit; that the appellee was entitled to partition, and that the purchasers at the partition sale were liable for rents of the appellee's interest in the lands from the time of their purchase until a subsequent conveyance by them to other appellants. The former decree and proceedings were set aside as against the appellee, a decree was entered against the purchasers for rents in accordance with the finding, and partition was ordered. From that decree this appeal was prosecuted.

York Eddy, the owner of the lands, died testate on October 31, 1911, leaving a widow, nine children and four children of a deceased daughter. By his will he devised a life estate to his wife with remainder to his ten children or their heirs, share and share alike. His estate was settled, and the widow having died, the appellant Seward A. Eddy, one of the sons, filed his bill on November 9, 1914, in the circuit court, making the other devisees defendants, with others, stating the title to the lands as devised and alleging that the appellee, Clarence Y. Eddy, was the owner, as tenant in common with the other devisees, of an undivided one-tenth of the lands. On January 4, 1915, the complainant by leave of court filed his amended bill, making the same

averments as to the land and ownership thereof, against the same defendants, including Clarence Y. Eddy, "if he be alive," but alleging that Clarence had resided at Erie, Whiteside county, Illinois, until about ten years before that time; that Erie and vicinity were his usual places of abode; that more than ten years before that time he left Erie and has never since returned; that he had not been heard of by any of his relatives and friends for more than eight years; that the complainant had made inquiry among the friends and relatives of Clarence and had been entirely unable to ascertain whether or not he was living or dead or to ascertain his whereabouts, residence or post-office address; that Clarence, if living, would be of the age of fifty-four years; that he had never been married, and the complainant believed that he was dead and died a single man, leaving no children or descendants. The bill then alleged that by virtue of the will of York Eddy and the death of appellee his brothers and sisters were each the owners of an undivided one-ninth part and the grandchildren of an undivided one-thirty-sixth part each, of the real estate as his heirs-at-law. The other devisees answered the amended bill, admitting the devise by York Eddy and admitting the averments of the bill as to Clarence Y. Eddy, and that the real estate was then owned, as averred in the amended bill, by the other devisees by virtue of the devise and as heirs-at-law of Clarence. In the amended bill the appellee was named as a defendant "if he be alive," but it was averred that he was not living, and facts were stated which raised a legal presumption of his death. The court by the decree found and recited the same facts alleged in the bill concerning the absence of Clarence Y. Eddy, and found that he was no longer living but departed this life at some time within the last ten years; that at the time he left Erie he had not been married and was never afterward married, so far as any of his relatives and friends knew; that he died a single man and left no last will and testament; that his estate passed to the other devi-

sees as his heirs-at-law, and that when he departed this life he left surviving him as his only heirs-at-law his brothers, sisters, nieces and nephews. The decree ordered partition in accordance with the averments of the amended bill, giving to the sons and daughters each a one-ninth part of the real estate and to the four grandchildren each one-thirty-sixth part. The commissioners reported that the lands could not be divided and a decree for a sale was entered, and they were sold to the complainant, Seward A. Eddy, and the defendants Newell R. Eddy, Lloyd Y. Eddy and Dana O. Eddy. The sale was approved and a deed to the purchaser was made by the master and a decree of final distribution was entered on June 28, 1915. On September 1, 1920, the purchasers at the master's sale entered into a contract with the appellants Leonard J. Doll, William J. Doll and Riely Greth for a sale and conveyance of the lands for $81,350. The payments were to be $7000 cash, $25,000 by assuming a mortgage, and the balance of $49,350 to be paid on March 1, 1921. An abstract of title was to be furnished showing a good merchantable title and possession to be delivered March 1, 1921, upon the final payment. The cash payment of $7000 was made and a deed was executed and deposited in a bank at Erie, to be delivered on compliance with the terms of the agreement. The appellee returned to Erie from his residence in Canada on February 20, 1921, and learning that the lands had been sold, notified the appellants who were purchasers at the master's sale, and Leonard J. Doll, William J. Doll and Riely Greth, to whom the lands had been contracted, of his claim of title. The appellants refused to recognize such title, and Leonard J. Doll, William J. Doll and Riely Greth took security from the purchasers at the master's sale against the claim of the appellee and the deed and possession were delivered.

The grounds of demurrer are again argued, but the demurrer was waived by answering except as to innate substantial defects of which advantage could be taken on the

final hearing. (*Gordon* v. *Reynolds,* 114 Ill. 118; *Gleason & Bailey Manf. Co.* v. *Hoffman,* 168 id. 25; *Bauerle* v. *Long,* 165 id. 340; *Baumgartner* v. *Bradt,* 207 id. 345.) There was no defect of that character in the bill.

Counsel for appellants contend that the circuit court acquired jurisdiction of appellee in the partition suit instituted by Seward A. Eddy, by publication and mailing notice to him as a living non-resident; that, having such jurisdiction of his person, the decree finding that he had died intestate and unmarried and that his interest in the lands had descended to his brothers and sisters, nephews and nieces, was a mere error of the chancellor, and not having been set aside on appeal or error was binding upon him. That argument involves the strange proposition that the chancellor found that jurisdiction had been obtained over a person found in the same decree to be dead. If it should be assumed as a fact that there was substituted service on the appellee by publication and mailing notice and no appearance in response to the service, the decree would not be a mere erroneous decision by the chancellor of an issue but would be a gross and palpable fraud not tolerated by a court of equity, and against which such a court would relieve unless the appellee was barred in equity from impeaching the decree for such fraud. The amended bill alleged ownership by the appellee of the one undivided one-tenth interest in the lands. The other devisees by their answer admitted the devise to appellee by his father and that he was thereby invested with the title. If, as now claimed, he was treated by the chancellor as a living person, there was not the slightest basis in the amended bill for claiming that the title had passed to the other devisees, and no issue was formed for the chancellor to decide. Taking such a decree and proceeding to execute it would be a fraud on the other parties, which would be relieved against by a court of equity.

It is not true, however, that jurisdiction of the appellee was obtained in the partition suit. By the decree in this

case the chancellor found that the court in the partition suit did not acquire and have jurisdiction of the person of the appellee by publication or otherwise and did not find or adjudge facts constituting such service. The decree in the partition suit is not contained in the abstract, but an incomplete portion of the decree regarding jurisdiction by substituted service is contained in the brief and argument for appellants. Reading the portion omitted by counsel, the decree does not show jurisdiction of the appellee. In the files there was found a certificate of publication of notice to him and other non-residents but none showing the mailing of notice to appellee at Erie or elsewhere. The absence of such a notice would not show want of jurisdiction if the chancellor in the decree had found the necessary facts constituting jurisdiction. The decree found, in general terms, that the court had jurisdiction of all defendants, but that was a mere conclusion of law necessarily implied from the exercise of jurisdiction. It would be inferred that the court concluded there was jurisdiction to enter the decree which was entered, but there was no finding of fact which supplied the absence of proof in that respect. It is immaterial, however, whether the court had jurisdiction, and the decree was voidable against the appellee for fraud or the decree was void for want of jurisdiction. The necessary direct and immediate effect of the decree and proceedings thereunder was to deprive the appellee of his estate without jurisdiction and without any process of law whatever, or by fraud, without any showing of anything which could constitute a bar to this suit.

By the decree in the former suit the court found that the appellee had died unmarried and without descendants, which was in accordance with the allegations of the bill and the admissions of the answer. The facts found by the court as proved, raised a legal presumption which justified a finding that the appellee was dead. The continuous absence of a person from his home or place of residence for a period

of seven years, during which nothing is heard from or concerning him, raises a presumption of his death for all legal purposes. (*Whiting* v. *Nicoll,* 46 Ill. 230; *Reedy* v. *Millizen,* 155 id. 636; *Policemen's Benevolent Ass'n* v. *Ryce,* 213 id. 9; *Donovan* v. *Major,* 253 id. 179; 8 R. C. L. 708; 17 Corpus Juris, 1166.) The courts of the State having jurisdiction of property within the State may provide for administration of an estate in a probate court where there is a presumption of death, under reasonable regulations and adequate protection of the property rights of the absentee if it should turn out that he was alive. (*Stevenson* v. *Montgomery,* 263 Ill. 93; *Cunnius* v. *Reading School District,* 198 U. S. 458; 3 Ann. Cas. 1121.) Prior to the enactment of section 78 of the Administration act in 1911 it was held in *Thomas* v. *People,* 107 Ill. 517, and repeated in *Salomon* v. *People,* 191 id. 290, that administration of a living man's estate was absolutely void for want of any subject matter. That section, making provision to secure the property to the person presumed to be dead in case he should be alive, and section 21, providing the form of letters showing that the administration was based on a presumption of death, obviated the objection to administration in such a case. (Laws of 1911, p. 2; *Stevenson* v. *Montgomery, supra.*) The law presumes that a person shown to be alive at a given time remains alive until the contrary is proved or a different presumption arises. The presumption of death which arises is not conclusive, and the law cannot deprive an absentee of his estate if he is alive. A law providing for the administration of the estate of an absentee containing no adequate safeguards to protect him in his rights if alive would be repugnant to the fourteenth amendment of the Federal constitution. (*Cunnius* v. *Reading School District, supra.*) The same principle and the protection of the same constitutional provision necessarily applies to any similar proceeding in a court. Circuit courts have jurisdiction to partition lands and may find that an owner is presumed in law to be

dead and dispose of his estate with lawful safeguards if he should be alive. The decree in this case made no provision for the protection of the property rights of the appellee if he should be living, but found that he was dead, unmarried and without descendants and transferred his estate to his brothers, sisters, nephews and nieces. The decree of sale ordered the proceeds arising from the sale of the appellee's estate paid to his brothers, sisters, nephews and nieces, and the court approved of the sale and of such payment.

The purchasers at the sale were the complainant and three of the defendants, who being parties to the record were chargeable with notice of the rights of the appellee. An innocent third party is not required to look beyond the jurisdiction of the court in purchasing property under a decree. (*Guiteau* v. *Wisely,* 47 Ill. 433; *Wadhams* v. *Gay,* 73 id. 415; *Montanye* v. *Wallahan,* 84 id. 355; *Thompson* v. *Frew,* 107 id. 478; *Crawford* v. *Thomson,* 161 id. 161; *Thompson* v. *Davis,* 297 id. 11.) The purchasers at the sale did not occupy that position but were bound to know that they were purchasing under a decree void as against the appellee. They contracted to sell the lands to Leonard J. Doll, William J. Doll and Riely Greth and to furnish an abstract showing a good merchantable title. Whether the decree showed jurisdiction and fraud or did not show jurisdiction, the purchasers had actual notice before the contract of purchase was completed and a deed delivered that the appellee was living and claiming his rights. On these grounds they could not claim the rights of *bona fide* purchasers without notice of any error in the decree.

All the persons having or claiming any present interest in the lands sought to be partitioned were made defendants in this case and there was no lack of proper parties.

The decree is affirmed.

*Decree affirmed.*