# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**In re Estate of Zagaria, 2013 IL App (1st) 122879**

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF SAMUEL N. ZAGARIA, JR. (John F. Lesch, Thomas V. McCauley and Nisen and Elliott, LLC, Petitioners-Appellees, v. Samuel N. Zagaria, Jr., Respondent-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-12-2879 |
| Filed | September 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a probate court declared that respondent was "presumed dead" after he had no contact with his family and friends for over seven years and his sister was appointed administrator of his estate and she retained attorneys to manage the estate's affairs, the trial court, after discovering that respondent was alive and returning the assets of the estate to him, did not err in entering a judgment for the attorneys' fees and ordering respondent to pay those fees from the assets returned to him, since the creation of the estate and the exercise of jurisdiction over the assets was valid and binding on respondent and returning the assets to respondent before paying the administration costs was unduly precipitous and did not deprive the trial court of authority to order payment of the fees from the estate *res*. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-P-3712; the Hon. Susan M. Coleman, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Mayfield/Broderick, of Northfield (William J. Broderick, of counsel), for appellant. |
|---|---|
| | Nisen & Elliott, LLC, of Chicago (Michael J. Daley and Carly V. Gibbs, of counsel), for appellees. |
| Panel | JUSTICE DELORT delivered the judgment of the court, with opinion. Justice Rochford concurred in the judgment and opinion. Justice Cunningham dissented, with opinion. |

**OPINION**

¶ 1    After Samuel N. Zagaria, Jr. disappeared from all contact with his family and friends for over seven years, a probate court declared that he was "presumed dead" and appointed his sister as administrator of his estate. The main asset transferred into the estate was a stock account worth about $500,000 that Zagaria had apparently abandoned years before. During the course of the estate administration, attorneys for the administrator serendipitously found him, alive, through a contact at a homeless shelter. The trial court revested him with title to his own assets, but the attorneys who handled the estate administration during his absence later sought compensation for their efforts. The court awarded the fees and ordered Zagaria to pay them from the assets that had been returned to him from the estate. In this case of first impression, we affirm the court below by finding that it did not err in ordering Zagaria to return a portion of the assets to the estate for the purpose of paying the attorney fees.

¶ 2                          BACKGROUND

¶ 3    Samuel Zagaria's sister, Joanne Corlett, hired John F. Lesch and Thomas V. McCauley of Nisen & Elliott, LLC (hereinafter, the attorneys) to assist her with her brother's affairs. The attorneys filed a petition for letters of administration upon presumption of death. The petition alleged that there was a long period of unexplained absence during which Zagaria had no dealing with his Merrill Lynch stock brokerage account and no communication with Corlett, nor any other family member. On July 6, 2009, the trial court entered an order finding that Zagaria disappeared from his last known place of residence on August 10, 2000, that he had not been seen or heard from since, and upon diligent inquiry could not be found. The court found that the facts created a presumption in law that Zagaria died intestate on August 10, 2007 and that due notice to all interested persons had been given as required by law. The court issued letters of office of the presumed-dead estate of Zagaria and appointed Corlett as independent administrator. Between July 10, 2009 and July 24, 2009, notice was

-2-

published that the court had issued letters of office to Corlett. Corlett submitted an administrator's bond in the amount of $625,000. Corlett is Zagaria's only heir at law.

¶ 4    During the administration of Zagaria's estate, the attorneys prepared Zagaria's missing personal tax returns and recovered unclaimed assets he owned that the State of Illinois was holding. The attorneys also attempted to collect benefits for the estate under an annuity contract between Zagaria and Transamerica Insurance Company, but learned they would have to obtain a "presumed-dead death certificate." The attorneys contacted governmental officials regarding how to obtain such a certificate and through that contact learned that someone had filed an application for public assistance using Zagaria's social security number. The address on the application was that of PADS to Hope, a homeless shelter near Zagaria's last known address (hereinafter, the homeless shelter or the shelter). On December 10, 2009, the attorneys contacted the shelter and were informed someone using the name Samuel Zagaria had visited the shelter. The shelter refused, however, to provide additional information about Zagaria to the attorneys without information about the value of Zagaria's assets. The attorneys, in turn, refused to disclose information regarding the value of Zagaria's assets to the shelter, and communications ceased.

¶ 5    On December 28, 2009, the attorneys, who still had no confirmation whether Zagaria was alive or that someone was falsely using his identity, issued a subpoena to the shelter commanding the executive director to appear and to bring the complete file on "Samuel N. Zagaria, Jr." After receiving the subpoenaed documents, the attorneys learned that a person using Zagaria's identity information last visited the shelter six months earlier, in June 2009. On March 3, 2010, the attorneys wrote the shelter thanking staff for giving this person their contact information, but stating that because no one had contacted the attorneys, they needed the shelter's assistance with making contact. The letter also stated that the attorneys had taken steps to assure that Zagaria's Merrill Lynch account did not escheat to the State and that the funds were being held in an account covered by a surety bond. The letter stated the money should be used for Zagaria's benefit but that "it would seem imprudent to just send a check to an occasional address." On May 12, 2010 the attorneys wrote the shelter again, stating Corlett held substantial funds and would like to meet with Zagaria regarding safeguarding those funds. The letter states that the shelter had previously informed the attorneys that Zagaria did not wish to meet with his sister. The letter suggested a meeting with the attorneys with shelter staff present.

¶ 6    From the record, it appears that the attorneys were not able to confirm that Zagaria was actually alive until June 8, 2010, when they met him face-to-face for the first time, along with Zagaria's counselor, representatives of the shelter, and an attorney whom they understood to represent Zagaria. The discussion centered around protecting Zagaria's assets and providing for his needs. The parties decided the estate should immediately provide $5,000 for Zagaria's needs and discussed creating a trust. On June 22, 2010, the attorneys wrote to the shelter to inform it of difficulties in securing the funds and to attempt to initiate discussions regarding creating a trust for Zagaria instead of a guardianship.

¶ 7    On August 4, 2010, counsel filed an appearance in the estate case on behalf of Samuel N. Zagaria, Jr. On August 26, 2010, Zagaria, through counsel, filed a motion to revoke letters of administration. The motion requested the court revoke the letters of office issued to

-3-

Corlett on July 6, 2009, order Corlett to provide a full and complete accounting of the "estate" of Samuel N. Zagaria, Jr., and to grant additional appropriate relief. Counsel attached Zagaria's affidavit stating that he is alive and has one sister, Joanne Corlett of Shelbyville, Indiana. On September 1, 2010, the trial court entered an order revoking the presumption of death and the letters of administration. The court ordered Corlett to provide a full accounting of the estate. The court also ordered Corlett to turn over all funds in the original Merrill Lynch account to Zagaria. The attorneys did not make a request for attorney fees at that time, but they did continue to work to close the estate. The attorneys' billing statement reflects that they sent the final accounting of the estate to the court on November 4, 2010.

¶ 8        On April 21, 2011, the attorneys filed a petition for attorney fees and costs totaling $30,859.21. The attorneys' services to the estate included, among other things, court appearances, preparation of pleadings to open the estate, preparing individual tax returns for Zagaria for 2001 through 2008, inclusive, and a fiduciary tax return for 2008; contacting the homeless shelter; discussing a guardianship for Zagaria; and meeting with him and speaking to his attorney. The attorneys provided a detailed statement of their time and disbursements, and Zagaria has not challenged the reasonableness of the fees.

¶ 9        On September 6, 2011, Zagaria filed pleadings opposing the fee petition. Zagaria argued, in part, that the attorneys were entitled to no compensation because they breached their fiduciary duty to the estate. Also on September 6, 2011, Zagaria filed a petition to surcharge the attorneys based, in part, on an allegation that the attorneys owed Zagaria a fiduciary duty. On March 8, 2012 the court denied Zagaria's petition to surcharge.[1] Zagaria did not appeal that order.

¶ 10        On April 11, 2012, the trial court entered an order finding that the attorneys' fees and expenses were fair and reasonable for the administration of the estate and imposed a judgment against the estate for $27,359.21. The attorneys issued a citation to Zagaria to recover assets for the estate to satisfy the judgment. In response, the attorneys received information that Zagaria had a new Merrill Lynch account with a balance of $366,096, created from the funds in the Merrill Lynch account previously held by the estate. In June 2012, the attorneys filed a motion for turnover of funds to satisfy the fee award judgment pursuant to section 16-1(d) of the Probate Act of 1975 (Probate Act) (755 ILCS 5/16-1(d) (West 2010)).

¶ 11        On June 1, 2012, the trial court entered an agreed order freezing the amount of the judgment in Zagaria's Merrill Lynch account until the court resolved the turnover motion. On August 29, 2012, the trial court allowed the motion for turnover against Zagaria. This appeal only seeks review of the August 29, 2012 order.

¶ 12        Zagaria argues the trial court erred because (1) petitioners failed to show cause to attach his nonprobate assets; (2) his claim to the estate property is superior to the attorneys' claim; and (3) the trial court's order is not supported by any existing law. Alternatively, Zagaria

_____

[1]The trial court's March 8, 2012 order states the petition was dismissed "for the reasons stated in open court." The record contains no transcript of those proceedings.

-4-

argues that if he is liable for attorney fees incurred in the administration of the estate, the attorneys for the estate owed him a fiduciary duty, and the trial court's finding to the contrary should be reversed.

¶ 13                                    ANALYSIS

¶ 14                            1. Administration of Estates

¶ 15     Although the "decedent" in this case is actually alive, the familiar principles applicable to regular decedents' estates nonetheless establish the framework for our analysis. "The administration of decedents' estates is a creature of statute ***." *In re Estate of Green*, 359 Ill. App. 3d 730, 734 (2005). The Probate Act (755 ILCS 5/1-1 *et seq.* (West 2010)) governs the administration of estates in Illinois. When an individual dies intestate, a qualified individual may assume the duty to settle and distribute the decedent's assets under the supervision of the court. *Will v. Northwestern University*, 378 Ill. App. 3d 280, 292 (2007) ("courts have the responsibility to oversee the administration of estates and to approve the actions of an estate's administrators"). "Thus, the powers of an administrator are derivative of the powers of a court, so that the administrator is essentially acting as an agent of the court pursuant to its control and direction." *Id.* The administrator assumes this duty after the court issues letters of administration. 755 ILCS 5/9-2 (West 2010). "Anyone desiring to have letters of administration issued on the estate of an intestate decedent shall file a petition therefor in the court of the proper county." 755 ILCS 5/9-4 (West 2010). The administrator has a duty to collect and conserve the personal assets of the estate, convert them into cash, to pay the decedent's debts or obligations, and to distribute the estate to those entitled thereto according to their respective rights. *In re Estate of Lis*, 365 Ill. App. 3d 1, 9 (2006); *In re Estate of Cappetta*, 315 Ill. App. 3d 414, 425 (2000); *Will*, 378 Ill. App. 3d at 292.

¶ 16     In performing her duties, the administrator is entitled to the assistance of an attorney. *Estate of Knight v. Knight*, 202 Ill. App. 3d 258, 261-62 (1990) ("Illinois allows fees for attorneys representing administrators ***."). Moreover, "[w]hen an executor or administrator in good faith retains an attorney and that attorney has performed services on behalf of the estate, such attorney is entitled to reasonable compensation regardless of the outcome of the litigation or the fact that the executor is eventually removed." (Internal quotation marks omitted.) *Baez v. Rosenberg*, 409 Ill. App. 3d 525, 535 (2011). An attorney's compensation for work performed on behalf of the estate is paid from the estate assets. *In re Estate of Goffinet*, 318 Ill. App. 3d 152, 159 (2001) ("Attorney fees incurred by a representative can only be awarded from the estate where the services are rendered in the interest of and to benefit the estate.").

¶ 17     "The administration of an estate in the probate court is not an action between or among parties, but is in the nature of a proceeding *in rem*, acting directly on the *res*, which is the estate of the deceased or the disabled person, and the judgment of the probate court settling the estate is a judgment *in rem*." *In re Estate of Denten*, 2012 IL App (2d) 110814, ¶ 42. "Where an estate's personal representative is required to perform a statutory duty, the expense of performing that duty is one of administration and a charge against the corpus of the estate." *In re Estate of Ginsberg*, 4 Ill. App. 2d 138, 144 (1955).

¶ 18                     2. Administration of Estates of Absentees

¶ 19     The Probate Act permits administration of an estate upon a legal presumption of death. 755 ILCS 5/9-6 (West 2010). The familiar "seven-year rule" is not established by any Illinois statute, but is a court-made rule established by historical case law. "The presumption of death is raised where (1) a person has disappeared or is continuously absent for seven years from his home without explanation, (2) those persons with whom he would likely communicate have not heard anything from him or about him, and (3) a diligent search has been made at his last known place of abode without obtaining information that he is alive." *In re Estate of Morrison*, 92 Ill. 2d 207, 212 (1982) (citing and reconciling numerous cases). When the presumption of death arises, the absent person is presumed to be dead for all purposes and in all courts. *Presbyterian Church of Carlyle v. St. Louis Union Trust Co.*, 18 Ill. App. 3d 713, 720 (1974).

¶ 20     The estate of one legally presumed dead is administered in the same way as the estate of one proved dead by other means. See 18 Robert S. Hunter, Illinois Practice § 109.5 (4th ed. 2007) ("Generally, probating on presumption of death is the same as probating an estate on any other proof of death, with the exception of the manner in which probate is commenced."). Probate of a presumed-decedent's estate is commenced pursuant to section 9-6 of the Probate Act. Section 9-6 provides, in pertinent part, as follows:

> "The petition shall state, in addition to the information required by clauses (c) through (h) of Section 9-4, the facts and circumstances raising the presumption, the name and last known post office address of the decedent and, if known, the name and post office address of each person in possession or control of any property of the decedent.

>     (b) Not less than 30 days before the hearing on the petition the petitioner shall (1) mail a copy of the petition to the decedent at his last known address, to each heir whose name and post office address are stated in the petition and to each person shown by the petition to be in possession or control of any property of the decedent, and (2) publish a notice of the hearing on the petition once a week for 3 successive weeks, the first publication to be not less than 30 days before the hearing." 755 ILCS 5/9-6(a), (b) (West 2010).

¶ 21     The presumption of death "is a rebuttable presumption that can be disproved by evidence showing the person presumed to be dead is alive." *In re Estate of Morrison*, 92 Ill. 2d at 212-13. When the presumption of death arises and letters of administration are issued, "the administrator *** stands in the shoes of the decedent and acquires the same interest in the decedent's property that the decedent had, but no more." *In re Estate of Cappetta*, 315 Ill. App. 3d 414, 425 (2000).


¶ 22                     3. Disposition and Recovery of Estate Assets

¶ 23     Under section 18-12 of the Probate Act, funds that were once held by the estate but which are no longer in the administrator's possession are nonetheless subject to claims against the estate. That section provides, in pertinent part, as follows:

"[A]ny claim not barred under this Section may be asserted against *** (2) a distributee of the estate (other than a creditor), but only to the extent that the distributee's share of the estate will not, in effect, be diminished below what the distributee would have received had the claim been paid by the representative." 755 ILCS 5/18-12(d) (West 2010).

¶ 24 A citation proceeding under section 16-1 of the Probate Act (755 ILCS 5/16-1 (West 2010)) is the statutory mechanism to recover assets that belong to the estate for purposes of paying estate expenses. See *In re Estate of Elias*, 408 Ill. App. 3d 301, 323 (2011). Section 16-1 of the Probate Act provides as follows:

"Upon the filing of a petition therefor by the representative or by any other person interested in the estate *** the court shall order a citation to issue for the appearance before it of any person whom the petitioner believes (1) *** to have in his possession or control any personal property, books of account, papers or evidences of debt or title to lands which belonged to a person whose estate is being administered in that court or which belongs to his estate or to his representative ***." 755 ILCS 5/16-1(a) (West 2010).

¶ 25 "In a citation proceeding, the probate court is empowered to determine the title and right of property and enter such order as the case requires." *Elias*, 408 Ill. App. 3d at 315. "The proceeding may be merely for the purpose of obtaining information with no adversary aspects, or it may develop into an out and out suit for the recovery of money." *Keshner v. Keshner*, 376 Ill. 354, 359-60 (1941).

¶ 26 "A finding of the trial court that certain property belonged to the estate will not be disturbed on appeal unless it is against the manifest weight of the evidence, [citation], as the trial court in such proceedings is authorized to determine all questions of title, claims of adverse title and the right of property." *In re Estate of Joutsen*, 100 Ill. App. 3d 376, 380 (1981). Because the record does not disclose whether the trial court received any evidence or made any findings of fact during the hearing on the motion for a turnover order we will review the court's judgment granting the motion *de novo*. *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 285 (2007) (because trial court did not conduct an evidentiary hearing or make any findings of fact the general deferential standard of review was inapplicable and the ruling on a motion for a turnover order was reviewed *de novo* (citing *Northwest Diversified, Inc. v. Mauer*, 341 Ill. App. 3d 27, 33 (2003))).

¶ 27                              4. Merrill Lynch Account Funds

¶ 28 The trial court's judgment that the funds in Zagaria's current Merrill Lynch account belonged to the estate is essentially undisputed. The parties, in fact, entered an agreed order stating that the funds in the account subject to the motion for turnover order are the same funds that were once held by the estate.

¶ 29 Upon the creation of the estate the trial court obtained *in rem* jurisdiction over Zagaria's funds. *In re Estate of Denten*, 2012 IL App (2d) 110814, ¶ 42. A court retains its authority to determine all questions of right to property belonging to an estate, and the court may enter an order to recover money for an estate. 755 ILCS 5/18-12(d) (West 2010); *Keshner*, 376 Ill.

at 359-60. Thus, Zagaria's contention that the funds in the current Merrill Lynch account are his personal property and not estate assets can only be construed as a collateral attack on the trial court's authority to create the estate that once held those funds. Zagaria admits the trial court properly opened the estate–he makes no argument whatsoever that his whereabouts were actually known, or should have been known, to Merrill Lynch, his family, or anyone else. The State thus had the legal authority to exercise control over Zagaria's property under the Probate Act based both on the judicially determined presumption of death and the due process protections contained in the governing statute.

¶ 30    In the seminal case of *Cunnius v. Reading School District*, 198 U.S. 458, 469-71 (1905), the United States Supreme Court held that a state's exercise of jurisdiction over an absentee's property does not violate the absentee's right to due process, if the state has enacted a statute which "endow[s] their courts with jurisdiction, under proper conditions, to administer upon the estates of absentees, even though they might be alive, by special and appropriate proceedings applicable to that condition." *Cunnius*, 198 U.S. at 473. The *Cunnius* Court only required a reasonable presumption of death, notice, and adequate safeguards of the presumed-decedent's right to his property should he or she be alive to confer jurisdiction without violating the presumed decedent's due process rights. *Cunnius*, 198 U.S. at 458-59. Our supreme court followed this reasoning in *Stevenson v. Montgomery*, 263 Ill. 93, 96 (1914), which held that "the State may provide for the administration of the estates of persons who are absent for an unreasonable time and may enact reasonable regulations on that subject." *Id.* Our supreme court similarly noted that "no constitutional right is invaded by legislation concerning administration of the estates of absentees upon reasonable notice, so far as the payment of claims, costs and expenses are concerned." *Id.*

¶ 31    In this case, the reasonableness of the presumption of death, compliance with the statute, and the adequacy of the safeguards arising under the Probate Act are all uncontested. Although he owned the estate assets and is legally entitled to them, because the proper judicial procedures were followed, Zagaria is bound by the court's judgments with regard to the estate *res* so far as the payment of claims, costs, and expenses are concerned. *Stevenson*, 263 Ill. at 96. In *In re Estate of Togneri*, 296 Ill. App. 33 (1938), the court held as follows:

> "If the court has jurisdiction of the estate and the jurisdiction is properly invoked the decree of distribution is a judgment *in rem*, which conclusively determines the rights of all parties interested just as fully as *** any other court. [Citation.] And it has been held that, in the absence of fraud, a judgment *in rem* binds all the world, irrespective of whether the persons bound are or are not parties to the litigation." (Internal quotation marks omitted.) *In re Estate of Togneri*, 296 Ill. App. at 37.

¶ 32    Once a valid presumption of death arose and the estate was opened according to statute, all of the funds in Zagaria's original Merrill Lynch account became subject to the control of the State, acting through the court, until those entitled to it could be ascertained *and* all just charges against the estate were discovered and paid. *In re Estate of Togneri*, 296 Ill. App. at 42. The attorney fees are a charge against the estate. "All the real and personal estate of the decedent and the income therefrom during the period of administration are chargeable with the claims against the estate, expenses of administration, estate and inheritance taxes and legacies without distinction ***." 755 ILCS 5/18-14 (West 2010). The funds in Zagaria's

current account were estate assets during the period of administration and, therefore, "are chargeable with *** expenses of administration." *Id.* Despite the fact Zagaria was in fact alive when the estate was created, and regardless of Zagaria's ongoing litigation regarding Corlett's personal use of estate funds,[2] Corlett's mere opening of the estate was not itself fraudulent. Accordingly, the trial court's order opening the estate was valid and binding, and the estate incurred reasonable attorney fees to benefit the estate. The estate is responsible for the payment of those expenses. *Estate of Henry v. St. Peter's Evangelical Church*, 337 Ill. App. 3d 246, 248 (2003) ("Section 6(a) of the Act provides that expenses of administration of the estate must be charged against the principal of the estate. [Citation.] Taken together, these sections require that an administrator account for all probate income at the time of distribution and that the income beneficiaries of the estate are entitled to all probate income not reduced by expenses of administering the decedent's estate, estate taxes and fees of attorneys and personal representatives.").

¶ 33        It has been 91 years since a reported decision of an Illinois court has addressed the distribution of funds belonging to one legally presumed to be dead but who returns to claim his property. See, *e.g.*, *Eddy v. Eddy*, 302 Ill. 446 (1922). Despite its age, our supreme court's judgment in *Eddy* is applicable to these facts, and it supports the judgment below. In *Eddy*, the court held that "[t]he courts of the State having jurisdiction of property within the State may provide for administration of an estate in a probate court where there is a presumption of death, under reasonable regulations and adequate protection of the property rights of the absentee if it should turn out that he was alive." *Eddy*, 302 Ill. at 453. In this case, there is no dispute Corlett complied with sections 9-6 and 24-5 of the Probate Act,[3] which provide

---

[2]In a supplemental petition filed in this case, Zagaria alleges Corlett took at least $104,371.46 from the estate as a distributee and that she has failed to refund it to him. The amount represents funds withdrawn from the estate Merrill Lynch account as well as $36,415.92 received from the State Treasurer. In a deposition contained in the record in this case, Corlett stated that the money received from the Treasurer is not included in the final account submitted to the court but is "Gone," and that she withdrew estate funds for, among other items, two ponies for her grandchildren and repayment of an erroneous owner award to the Indiana Horse Racing Commission. The supplemental petition is not before us and litigation regarding it is ongoing in the trial court. Nothing in this record, however, suggests that her lawyers were somehow involved in her alleged wrongdoing, or that they earned substantial additional fees because of it. Accordingly, we do not believe it is appropriate to consider Corlett's misconduct in the context of the attorney fees at issue in this appeal.

[3]Despite the many similarities in procedure, there is one significant difference between administration of decedents' estates and presumed decedents' estates. When someone receives property from a decedent's estate, the legatee is free to dispose of it as she sees fit. However, under section 24-5, persons receiving property from a presumed decedent's estate must post a bond payable to the people of the State of Illinois in double the value of the distributive share to be paid, with surety approved by the court. The bond is "conditioned to refund to the person presumed to be dead, if alive." The bond must remain in place for at a period not to exceed 10 years, "but the release of the surety at the expiration of the 10 years does not release the distributee from liability to refund

the protections noted by our supreme court in *Eddy*. Therefore, there can be no genuine dispute of the trial court's authority to open the estate or its jurisdiction over the funds. Under the Probate Act, the court's jurisdiction includes the authority to order that the funds be used to pay the cost of administering the estate.

¶ 34　Because Corlett complied with all of the statutory requirements, the creation of the estate and the exercise of jurisdiction over Zagaria's property was valid and binding on Zagaria. Because the trial court had legal authority to open the estate upon the lawful presumption of death, Corlett properly held the funds as administrator of the estate and not as trustee for Zagaria, and Zagaria is a distributee of the estate within the meaning of section 18-12(d). See *Knight v. Gregory*, 333 Ill. 643, 649 (1929) ("Distribution" refers to "the division by order of the court having authority, among those entitled thereto, of the residue of the personal estate of an intestate after payment of the debts and charges. *** It is, specifically, division of an intestate's estate according to law." (Internal quotation marks omitted.)).

¶ 35　Returning all the estate funds to Zagaria before accounting and paying the administration costs was unduly precipitous. See 755 ILCS 5/28-11(b)(7) (West 2010) ("An independent representative seeking discharge shall mail or deliver to all interested persons an accounting and shall file with the court a verified report stating *** [t]hat all administration expenses and other liabilities of the estate have been paid and that administration has been completed, *or to the extent not completed* has been provided for as specified in the report." (Emphasis added.)). The problem was exacerbated by the attorneys' delay in requesting their fees. Nonetheless, the property at issue in this case belonged to a lawfully created estate based on the legal presumption of death. The fact that the property is now in Zagaria's hands does not deprive the trial court of authority to order the payment of the cost of administering the estate from the estate *res*. See *In re Estate of Elias*, 408 Ill. App. 3d at 323 ("[T]he circuit court has broad discretionary powers in awarding an executor's attorney fees. [Citation.] Also, section 16-1(d) of the Probate Act regarding citations to discover assets provides that the court may enter such orders and judgment as the case requires." (Internal quotation marks omitted.)).

¶ 36　Our supreme court once held that "a grant of administration on a live man's estate, together with all acts done under such a grant, is absolutely null and void." *Thomas v. People*, 107 Ill. 517, 522 (1883). However, as the same court later found in *Eddy*, this doctrine was superceded by the enactment of section 78 of the administration act in 1911 (1911 Ill. Laws 2 (§ 78)), the predecessor to section 24-5. *Eddy*, 302 Ill. at 453. Accordingly, once the trial court properly opens a presumed-dead estate, the discovery of the presumed-decedent alive does not void the estate *ab initio*.

¶ 37　The law in Illinois and in most jurisdictions long ago evolved from the view–essentially the same view espoused by Zagaria in this case–that "if the supposed intestate should subsequently turn up alive, the grant of administration, and all acts done under it, would be absolutely void." *Thomas*, 107 Ill. at 528. "[S]ection [78 of the administration act], making provision to secure the property to the person presumed to be dead in case he should be alive, and section 21, providing the form of letters showing that the administration was based on

---

the distributive share received by him." 755 ILCS 5/24-5 (West 2010).

a presumption of death, obviated the objection to administration in such a case." *Eddy*, 302 Ill. at 453. The statutory requirements of notice and safeguards of the presumed-decedent's right to recover his property upon administration of an estate on a reasonable presumption of death affords due process protection to the presumed-decedent (*Cunnius*, 198 U.S. at 476-77) and vests the circuit court with authority to administer the estate, including the payment of expenses from estate property (*Stevenson*, 263 Ill. at 96).

¶ 38    We do not believe that it was error to hold that the estate assets could be used to pay the costs of administering the estate. As independent administrator, Corlett "had a right to hire an attorney to handle the legal affairs of the estate." *Jewish Hospital of St. Louis, Missouri v. Boatmen's National Bank of Belleville*, 261 Ill. App. 3d 750, 768 (1994). "As a general rule, trustees and executors are entitled to reimbursement for all expenses and attorney fees properly incurred in the administration of the trust and the estate and in defending the trust and the estate." *Id.* at 770.

¶ 39    The trial court's turnover order is proper because the funds at issue were part of the *res* of a lawfully created estate and the purpose of the order to turnover the funds is to satisfy a judgment against the estate. The amount Zagaria receives from the estate will not be diminished below what he would have received if the funds not been returned to him prematurely, before the estate paid its reasonable attorney fees.

¶ 40    Zagaria presents one last argument against the award of fees here. He suggests a rather novel legal fiction under which he would be deemed to be a "creditor" of his own estate, and entitled to the rights of a creditor. See 755 ILCS 5/18-12(d) (West 2010). The law establishes a structure under which creditors of deceased persons and of wards can recover the debts owed to them. However, because this structure presumes that the deceased and the creditor are two different persons, it does not lend itself to the situation presented here. We therefore find that Zagaria is not entitled to classification as a "creditor of the estate."

¶ 41                    5. Equitable Principles

¶ 42    Above, we explain how there is a valid statutory basis for the trial court's fee award and turnover order. The judgment below can also be sustained on the basis of equitable principles. When considering equitable questions, the court is governed by the principles of fair dealing. *Baehr v. Health & Hospital Governing Comm'n*, 86 Ill. App. 3d 43, 47 (1980). "[N]o one ought to enrich himself unjustly at the expense of another." *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 500 (2001). "[W]hen a person has received a benefit from another, he is liable for payment *** if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." (Internal quotation marks omitted.) *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 9 (2004). "[I]t is unnecessary to have a precedent for equitable relief before it will be granted." *Johnson v. Johnson*, 11 Ill. App. 3d 681, 685 (1973).

¶ 43    Contending that equity does not require him to pay the attorneys for protecting his assets while he was missing, Zagaria characterizes the funds in his account as his own nonprobate assets. There can be no genuine dispute that the attorneys' services benefitted Zagaria even if the Merrill Lynch funds are nonprobate assets. The attorney fees sought include

-11-

compensation for significant time spent gathering the estate, preparing and filing Zagaria's back tax returns, and dealing with the homeless shelter's inability or unwillingness to confirm Zagaria's identity. If the estate had not been opened, the funds in the original Merrill Lynch account were in danger of escheating to the State. See 755 ILCS 20/1 (West 2010); 755 ILCS 5/2-1(h) (West 2010). Zagaria may have been able to recover those funds on his own even after the passage of some time. 755 ILCS 20/7 (West 2010) ("[I]f any person appears within 10 years after the death of the intestate and claims any money paid into the treasury as his or hers, *** such person may file a petition in the circuit court *** stating the nature of the claim and praying such money may be paid to the claimant. *** All persons who fail to appear and file their petitions within the times limited, herein, shall be forever barred, saving, however, to minors and persons under legal disability the right to appear and file their petition as hereinabove set out, at any time within 5 years after their respective disabilities are removed."). However, the attorneys' efforts in this case spared him having to do so, even assuming Zagaria would have returned to ever claim the funds. It is fair to speculate that Zagaria would never have regained possession of his money had it not been for the efforts of the attorneys. There is nothing in the record to suggest Zagaria, who had disappeared for years and was using a homeless shelter, would have ever reclaimed his money had his sister and the attorneys not become involved.

¶ 44    Equitable principles do not preclude the application of statutorily-based attorney fee obligations. See also *In re Estate of Breault*, 63 Ill. App. 2d 246, 272-73 (1965) (The duty to compensate for services rendered on one's behalf "may often be quasi-contractual and binding on those benefited. Such quasi-contractual obligations are often founded upon a statutory, official, or customary duty, and arise when the court seeks to uphold the fundamental principle that no one ought to enrich himself unjustly at the expense of another."). The probate court is empowered to enter a judgment based in equity. *In re Estate of Breault*, 63 Ill. App. 2d at 270-71 ("It is, therefore, apparent that the trial court, as the Probate Division of the new Circuit Court, had the jurisdiction and authority to apply equitable principles and direct contribution in accordance therewith."). Equity demands that Zagaria not escape the burden of the cost of services that were performed as statutorily provided on his behalf and to his benefit.

¶ 45                                    6. The Attorneys' Fiduciary Duties

¶ 46    Finally, Zagaria argues that if we affirm the main judgment order at issue here, then we should also reverse the trial court's March 8, 2012 judgment that the attorneys did not owe Zagaria a fiduciary duty. Our supreme court has held:

    "Supreme Court Rule 303(b)(2) provides that a notice of appeal shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court. [Citation.] The filing of a notice of appeal is the jurisdictional step which initiates appellate review. [Citation.] Unless there is a properly filed notice of appeal, the appellate court lacks jurisdiction over the matter and is obliged to dismiss the appeal. [Citation.] A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts of judgments specified in the notice of appeal." (Internal

-12-

quotation marks omitted.) *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 175-76 (2011). This court lacks jurisdiction over Zagaria's appeal of any judgment in the March 8, 2012 order. Zagaria did not specifically file a notice of appeal from the trial court's March 8, 2012 order, and the order and judgment are not expressly mentioned in the notice of appeal.

¶ 47    We recognize that "a notice of appeal is to be liberally construed. [Citation.] *** [A] notice of appeal will confer jurisdiction on an appellate court if the notice, when considered as a whole, fairly and adequately sets out the judgment complained of and the relief sought so that the successful party is advised of the nature of the appeal." (Internal quotation marks omitted.) *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 22. In this case the notice of appeal specifies the August 29, 2012 order granting the motion for turnover. The notice states that by this appeal, Zagaria will ask this court to reverse that order and deny the motion for turnover. The notice makes no reference to any prior orders or judgments of the trial court.

¶ 48    Our supreme court has also "found notices of appeal to confer jurisdiction even if the order was not expressly mentioned in the notice of appeal, if that order was a step in the procedural progression leading to the judgment which was specified in the notice of appeal." (Internal quotation marks omitted.) *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23. If the order specified in the notice of appeal directly relates back to the judgment or order sought to be reviewed, then the notice of appeal is sufficient to confer jurisdiction under this rule. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 434-35 (1979). In other words, the unspecified judgment must be "a preliminary determination necessary to the ultimate relief sought by the [appellee]." *Burtell*, 76 Ill. 2d at 436.

¶ 49    The March 8, 2012 judgment was not a preliminary determination necessary to the trial court's judgment on the motion for turnover. The judgment as to whether the attorneys owed Zagaria a fiduciary duty personally is not a preliminary determination necessary to the judgment against the estate or to recovering funds for the estate. The issue of the attorneys' fiduciary duties to Zagaria *personally* is not "sufficiently closely related" to the attorneys' service to the *estate* or to whether the funds are estate assets for the notice of appeal to confer jurisdiction over that issue. *Burtell*, 76 Ill. 2d at 436. The March 8, 2012 order contains the only final judgment on the issue of whether the attorneys owed Zagaria a fiduciary duty. Because that order is not properly before us, we will not consider the arguments raised regarding it.

¶ 50                                                CONCLUSION

¶ 51    The trial court committed no error in ordering Zagaria to turn over funds in his Merrill Lynch account to satisfy the judgment awarding attorney fees. Moreover, Zagaria was equitably responsible for the cost of administering the estate, which was created when the presumption of death arose due to his absence. Accordingly, we affirm the judgment below.

¶ 52    Affirmed.

¶ 53    JUSTICE CUNNINGHAM, dissenting.

¶ 54    I respectfully dissent from the holding of the majority. I would reverse the trial court's ruling which ordered Samuel Zagaria (Zagaria) to pay the administrator's attorneys from his personal, nonprobate funds. In my view, while a court of review must follow the letter and spirit of the law, it must also seek to infuse its rulings with justice and equity. This case is before us for two reasons: (1) the attorneys hired by the administrator of the estate inexplicably failed to petition the trial court for their fees prior to the letters of administration being revoked and the estate being closed; and (2) rather than seek payment from their client, the administrator of the estate who recovered significant funds from the estate, the attorneys sought payment from Zagaria personally *after* the estate was closed. Thus, the attorneys seek this court's intervention in rectifying a problem of their own creation. I do not believe this is an appropriate exercise of this court's power. I take no issue with the majority's ruling that there is a statutory basis for awarding fees in this case. I do, however, strongly disagree that there is an equitable basis for the award made by the trial court specifically as the principles of equity are applied to these facts. Plainly said, the equities do not lie with Zagaria's sister, Joanne Corlett (Corlett), and the attorneys, but rather with Zagaria. Accordingly, I would resist the invitation to resolve this artificially created issue which, by the trial court's ruling and affirmance by the majority here, has the appearance of injustice to Zagaria.

¶ 55    Zagaria and his sister, Corlett, had not communicated in over seven years at the time the trial court was petitioned by Corlett. She claimed that she assumed Zagaria was dead. Corlett asked the trial court to open a "presumed dead" probate estate and declare her brother dead. The estate was opened and Corlett was appointed administrator. The attorneys whom Corlett retained to represent her as the administrator of the estate were experienced estate attorneys. The search done by the attorneys to locate Zagaria in the course of trying to determine if he was dead was extensive, but far from thorough. In fact, Zagaria was subsequently located via a simple search by a third party of an obvious state database, which should and could have been examined by the attorneys earlier. The database revealed that someone with Zagaria's social security number had applied for food stamp assistance within the months preceding the search by the attorneys. Following that lead, the attorneys were led to the knowledge that Zagaria was likely living in a shelter in his hometown of Palatine. From that point until the actual face-to-face meeting between the attorneys and Zagaria in June of 2010, it is fair to say that there was a strong indication that Zagaria was alive. However, neither the administrator nor her attorneys informed the trial court. Instead, the administrator continued to help herself to money from the estate under the mantle of administration of the estate. Although the attorneys mounted an effort to make contact with Zagaria after determining that he was very likely alive, it appears that he resisted contact and seemingly wanted nothing to do with his sister or her attorneys. This continued for many months without the court's knowledge. Finally the court became aware that Zagaria was alive. This knowledge was brought to the court's attention by an attorney retained by Zagaria, not by the administrator or her attorneys.

¶ 56    After the attorney representing Zagaria informed the court that he was alive, the attorneys representing Corlett and the estate took no steps to seek the court's guidance regarding the proper procedure for closing the "presumed dead" probate estate (as one may expect them

-14-

to do given its unique circumstances). Whatever the reason for their dalliance in seeking guidance from the court, they never sought fees for their work within the parameters of the estate while the matter was still actively pending before the trial court. Rather, they waited a considerable length of time specifically, until April of 2011. By that time the court had already revoked the presumption of death and the letters of administration, and the attorneys had already provided an accounting to the court. In essence, they took all the necessary steps required to close the estate, except for filing a fee petition.

¶ 57    Thus, by the time the attorneys who represented Corlett and the estate filed their fee petition, the "presumed dead" probate estate was closed and Zagaria's remaining funds had been returned to him. He placed those funds in a new account, separate from the prior Merrill Lynch account which had held the funds during the pendency of the estate.

¶ 58    The record is silent regarding any attempt by the attorneys to collect their fee from Corlett. When asked this question during oral argument in this court, the attorneys demurred. In other words it can be inferred that they had not sought payment from their client but rather petitioned the court to force payment from Zagaria. It should be noted that the attorneys asserted, and the trial court agreed, that the attorneys owed no duty to Zagaria during the course of the representation of the estate for which the court ultimately ordered Zagaria to pay their fees. Simply put, they were not his lawyers. They represented Corlett and the estate, but not Zagaria. Unfortunately, Zagaria did not preserve that issue for appeal so it is not before us. Nevertheless, it highlights the unique facts of this case and the seeming injustice which has been brought to bear on Zagaria.

¶ 59    Zagaria's estate held approximately $518,000 in it when it was opened as a "presumed dead" probate estate in the trial court. By the time the court revoked the letters of administration and closed the estate it had dwindled to approximately $366,000. Over the relatively short period of time that the estate was open the administrator steadily depleted it. It is undisputed that Corlett, as administrator, made many distributions of money to herself from the estate during its pendency. It is also undisputed that the amount she received is significantly greater than the fees sought by her attorneys, who presented their fee petition to the court after the presumption of death and the letters of administration for the estate had been revoked. I do not question the trial court's authority to open the "presumed dead" probate estate based on the information provided to the court by Corlett. Likewise, I believe the trial court had the authority to order payment of the $27,359.21 in attorney fees from the estate, if the fee petition had been presented to the court *before* the estate was closed. The court found the fees reasonable and it is undisputed that the attorneys represented Corlett and the estate in what they believed to be a "presumed dead" probate proceeding. Unfortunately, the case took a unique turn and the attorneys did not follow established procedure. Specifically, they did not seek their fees from the estate at the point in time when it would have been appropriate to do so. Rather, they waited for an extended period of time, then sought the court's assistance in forcing payment from the man to whom they claimed to have no duty. Further, if we accept the logic of following the money as suggested by the trial court and affirmed by the majority, it is difficult to understand why there is no mention of the money from the estate which was in Corlett's possession, and why those funds were not appropriately used to pay the attorney fees.

¶ 60        I do not believe there is sufficient evidence in the record that supports the trial court's rulings on an equitable basis which culminated in the order that Zagaria must pay the attorneys from his personal funds. The record shows that Corlett got herself appointed administrator of Zagaria's estate, but it does not necessarily support the view that she was acting in his best interest. On the contrary, the record is replete with facts which suggest that Corlett's motives were less than pure. In resisting the urge to review this case purely on a procedural basis, I believe it is important to keep the principles of justice and equity in mind given the specific facts of this case. Those principles make it difficult to consider the actions of Corlett in laudatory terms. The trial court did not have an opportunity to conduct a hearing regarding any underlying facts which may have answered many questions in this unusual case, and which may have provided some clarity regarding Zagaria's behavior. For example, it would have been useful for the trial court to know whether Zagaria had experienced a disagreement with Corlett prior to ceasing contact with her seven years earlier. Nor does the record reveal whether Zagaria intentionally abandoned his estate. The majority opines that the actions of the attorneys in protecting Zagaria's assets "while he was missing" benefitted him greatly and the attorneys should be compensated for it. On the contrary, the record as well as Zagaria's attorney, suggest that Zagaria did not consider himself "missing." The record is silent on why he chose to cease contact with Corlett, but he clearly declined to reestablish contact with her when given the opportunity to do so. In fact, the entire probate case is built on speculation and the self-serving statements of Corlett. While it is reasonable for the trial court to have opened a "presumed dead" probate estate based on the information provided by Corlett, Zagaria's reappearance makes it clear that there are many unanswered questions. A probate estate such as that which was established in this case is not the personal piggy bank of the administrator. Nevertheless, Corlett in this case freely availed herself of her brother's money for her personal benefit. This activity continued even after it became known that Zagaria was likely alive, thereby negating the need for a probate estate and an administrator.

¶ 61        As discussed, the attorneys who represented Corlett and the estate denied that they had any duty to Zagaria. It can thus be inferred that they believed their duty to be owed only to Corlett and the estate. If that is true, should it not follow that Corlett, as their client, is responsible for their fees? Yet, it appears that Corlett's attorneys have convinced the trial court to let them have it both ways. In addition, since Zagaria did not preserve that issue for appeal, it cannot be revisited. The attorneys argue, and the trial court and the majority here seem to agree, that their allegiance is to their client, which presumably includes Corlett as administrator of the estate. Yet, she is absolved of any responsibility for their fees. Zagaria, on the other hand, has had his estate diminished significantly by the actions of Corlett, and yet, he is responsible for all of her attorney fees. The premise which the trial court and the majority seem to espouse is that Zagaria benefitted from the actions of Corlett and her attorneys and that benefit makes Zagaria personally responsible for Corlett's attorney fees. There is no question that the attorneys performed some service to the estate. Yet, it is certainly debatable as to whether Corlett or Zagaria benefitted more from the attorneys' action *and* which of the two should pay the attorney fees.

¶ 62        I disagree that any of the cases cited by the majority support its holding. This is especially

so for those cases cited in support of its holding based on equitable principles. For example, the majority cites *In re Estate of Breault*, 63 Ill. App. 3d 246 (1965), for the proposition that the trial court may enter an equitable judgment. I agree that the trial court is empowered to enter equitable judgments under certain circumstances. However, I disagree as to who is the proper beneficiary of the equitable principles in this case. The majority believes that "equity" demands that Zagaria not escape the burden of the cost of services that were performed as statutorily provided on his behalf. This is a difficult premise to accept as applied to these facts. Does equity not apply in the same measure to Corlett? Further, as the attorneys denied any duty to Zagaria in their representation, could they truly be said to be acting "on his behalf"? I would apply these equitable arguments equally to Corlett. It is she who should not be allowed to escape the burden of the cost of services that were performed by her attorneys, and which benefit she personally enjoyed.

¶ 63 While Zagaria's seeming indifference to his money is at odds with societal norms, no one can say with certainty that, but for Corlett's actions, his fortune would have been lost. When read as a whole, there is ample evidence in the record to suggest that Corlett's motives were less than honest. Thus in my view, while Zagaria is technically a distributee of his own estate, Corlett was also a distributee as the administrator of the estate. Thus she had a duty to pay the attorneys whom she retained to represent her and the estate (since she collected a significant sum of money from the estate).

¶ 64 It bears repeating that the primary reason that this case is before us is because the attorneys neglected to file their fee petition with the trial court *before* the court revoked the presumption of death and letters of administration, closed the estate and ordered the money distributed to its rightful owner. The attorneys had every opportunity to petition the court for their fees in a timely way, yet for reasons which remain unclear, they did not do so. Their counsel admitted during oral argument that the fee petition should have been filed within the parameters of the pendency of the "presumed dead" probate estate. Thus, I agree with the majority that "[r]eturning all the estate funds to Zagaria *before* accounting and paying the administration costs was unduly precipitous." (Emphasis added.) *Supra* ¶ 35. Now, the attorneys seek this court's assistance in rescuing them from their own inexplicable, "precipitous" behavior. These were experienced probate attorneys who essentially did not follow established procedure. It is not this court's prerogative to save them from their own malfeasance.

¶ 65 The majority opines that the funds at issue were part of the *res* of the probate estate. Therefore that makes it proper for the funds to be used to pay Corlett's attorneys. However, the same logic should apply to the funds which Corlett paid to herself from the *res* of the estate. I believe that the majority's application of equitable principles is misplaced as the equities do not lie with Corlett and her attorneys, but rather with Zagaria. In this case, the attorneys were not vigilant in seeking their fees before the estate was closed. I agree that no one ought to enrich himself unjustly at the expense of another. This maxim applies to Corlett, who received significant funds from her brother's estate and is now being absolved of the responsibility to pay the lawyers that *she* hired. Thus, in this case as between Corlett and Zagaria, it is unjust for Corlett to take such significant sums of her brother's money to enrich herself, yet have no obligation to pay the attorneys who helped her enrich herself. Indeed, an

-17-

argument can be made that Corlett held the money which she took from the estate in a constructive trust for the benefit of the estate. See generally *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291 (2000). Corlett received several distributions of money from the "presumed dead" probate estate *after* it became probable that Zagaria was alive. This behavior highlights the equitable maxim that "[w]hen a person *** obtain[s] money to which he is not entitled, under *** circumstances that in equity and good conscience he ought not retain it, a constructive trust can be imposed to avoid unjust enrichment." *Id.* at 299. This is precisely the circumstance presented here.

¶ 66    Thus the estate funds which were distributed to Corlett, especially those which she took *after* it became likely that Zagaria was alive, should be considered constructively held in trust by her for the benefit of the estate. A perfect use of those trust funds would be payment of the attorney fees which accrued on behalf of the estate.

¶ 67    Assuming, *arguendo*, that the actions of the attorneys benefitted Zagaria, it does not answer the question of why they did not first seek payment from their client, Corlett, before Zagaria, since she also benefitted. The outcome of this case leaves the impression that the courts have chosen to rescue the attorneys from a situation which is of their own making and reward Corlett for her personal use of estate funds. When all of the facts are reviewed and the case is analyzed as a whole, the equities do not lie with the attorneys and Corlett but rather with Zagaria. While I agree that equitable principles do not preclude the application of statutorily based attorney fee obligations, I believe that the equitable principles have been incorrectly applied by the majority in this case. The estate was significantly dissipated by Corlett for her personal benefit under an administrative cloak. The benefits which the attorneys brought to the estate inured to her personally as well as to the estate. While Zagaria may have also benefitted, he should not occupy the primary spot in the equitable hierarchy of payers. The equities are such that justice requires that under these facts Corlett should pay the attorneys who represented her and the estate and who have declared that they did not represent Zagaria and had no duty whatsoever to him.

¶ 68    Accordingly, I would reverse the trial court's ruling which orders Zagaria to pay the attorneys from his personal funds.